## No. 7741.

### PALMER DICKSON ET AL. VS. H. P. DICKSON ET AL.

·The allegation of a defendant in her answer that she had "*advanced*" a certain sum to the plaintiff does not amount to a plea of payment.

.A plaintiff who successfully objects to the introduction of evidence to support a certain alle-gation in the defendant's answer, cannot afterward ask that the allegation be considered, · as involving any admission by the defendant.

Where a debtor executes a mortgage to his creditor to secure a certain debt, and the creditor does not accept the mortgage at the time of its execution, and some time thereafter, *be-fore* accepting the mortgage, sues to recover the debt, the debtor will be thereby released from the obligations of the inchoate mortgage.

APPEAL from the Eighteenth Judicial District Court, parish of Bos-sier. *Turner*, J.

J. D. Watkins for plaintiffs and appellants :

First—We quote the following authorities : A mortgage may be given for part of an obligation, R. C. C. 3294. See, also, 3304, 3307. No written acceptance of a mortgage necessary. 8 A. 508 ; 12 A. 739.

Second—H. D. 1001, Nos. 9 and 938, Nos. 3 and 1002, No. 16. The offer in the Leonard lease to have plaintiffs relinquish their mortgage, and their refusal, was an acceptance of the mortgage. A mort-gagee's acceptance is presumed. Usufructuary can renounce usu-fruct at any time, as did Mrs. Dickson in face of this mortgage. Louque's Digest, 609, No. 20 ; 30 A. 268. The mortgage was no novation. Louque, p. 461, Nos. 4 and 5, and p. 462, Nos, 4, 6, 8, 12, 13, 15.

Third—Donations must be of present property. It cannot be such matter as stated in mortgage sued on. R. C. C. 1468 and 1528. Obligations separately contracted may be separately enforced. 2 R. 207. H. P. Dickson's bond as ·administrator was one obligation.

Dickson et al. vs. Dickson et al.

The mortgage was another, separate. Of the mortgage the parish court had no jurisdiction, and it could not be urged in opposition to administratrix's account in the Boisse case.

Fourth—It is not permitted to sue in reconvention to cancel a lease in response to a suit by a plaintiff for a sum of money, any more than to plead a petitory action against a money demand.

L. M. Nutt and B. F. Fort for defendants and appellees:

First—No consideration for this obligation is expressed, none alleged, no legal or valid one proved. There is no evidence of intention on part of plaintiffs to accept, until institution of this suit, 9th of June, 1879, nearly five years after date of notarial act. Acceptance should have been in a reasonable time. C. C. art. 1802.

Assent must be made by acts excluding every other hypothesis. 12 An. 253, and authorities cited. C. C. 3411, sec. 5, 1800, 1801.

Second—Our courts have repeatedly held that the true cause or consideration of a written instrument, authentic or under probate signature, can be shown by parol. C. C. arts. 1893, 1900; 3 An. 235; 4 An. 540; 7 An. 298.

Parol proof is admissible to prove the character of the consideration or cause. Greenleaf, 283, 284.

Third—The plaintiffs, by their allegation in the petition, are residents of Caddo, a different residence to that of defendant, their mother, and therefore, by C. P. 375, she can reconvene for any cause, although not connected with nor incidental to the main action.

Fourth—The Rush Point place, by the evidence, is worth $2000 per year, and the amount plaintiffs pay for it is only fifty dollars per year. Then the lease is simply a donation, and void for want of being passed before a notary and two witnesses. C. C. 1536 and 1538.

Fifth—The pretended lease for seventy-five dollars per year of property worth one thousand dollars per year, if the court under the evidence believes it to be real, is also a virtual donation, and void for want of form. The contest as to this last lease shows the necessity for the rule in C. C. 1536 and 1538.

Sixth—A donation may be revoked for ingratitude. C. C. 1559, 1560, 1561.

___

The opinion of the court was delivered by

DeBlanc, J. On the 13th of May, 1874, one of the defendants— Mrs. H. P. Dickson—acknowledged, in a notarial act, that she was truly and justly indebted unto her children Lizzie, Emily, Palmer and Hugh, in the sum of each five thousand dollars, with interest at eight per cent from the date of the acknowledgment, and—to secure that unexplained indebtedness—consented to a mortgage on several fractions of land.

18

Mrs. Dickson alone appeared in, and signed the act which evidences, that obligation and the mortgage, which remained unaccepted until the 9th of January of last year, when Palmer and Hugh brought suit to enforce the obligation and foreclose the mortgage.

In her answer to that suit, Mrs. Dickson charges that she granted the mortgage as a gift, to assist her sons Hugh and Palmer, who were then indicted for murder, in defending themselves—that from time to time, *before* and since their trial, she advanced to them the sum of ten thousand dollars ; and that, in order to protect her daughters' interest against any undue advantage which might result from the granting of that mortgage, she—in the act of the 13th May—bound herself towards them as she had done towards their brothers, who virtually repudiated the proffered assistance, by suing her for a considerable amount, which they claimed as coming to them from their father's estate.

She also charges that they—Hugh and Palmer—" must have known that if there was any obligation from her and to them in the pretended mortgage, and this she denies, it could only have been for money due by her as usufructuary and administratrix of the property belonging to the succession of her husband."

She avers—besides—that Palmer and Hugh have caused to be recorded an instrument purporting to be a lease from her to them of the Gumspring plantation—that said lease was never made, and—by its unauthorized recordation—she has suffered damages to the amount of three thousand dollars—and, lastly, that—by their outrageous conduct towards her—they have forfeited the right to retain possession of another plantation, which she has rented to them for a nominal price.

She, accordingly, prays that her sons' demand be rejected, they condemned to pay her the sum of three thousand dollars; and that the leases herein referred to be annulled.

The principal and reconventional demand were rejected at plaintiffs' costs, and they appealed.

Does defendant's answer contain—as contended—the plea of payment ? She first alleges that from time to time, before and since the trial of her sons, she has *advanced* to them the sum of ten thousand dollars, and then explains how said sum and more was *advanced*, but persistently denies the validity of the obligation and mortgage sued upon, which—she avers—were never completed by the acceptance of either Hugh or Palmer Dickson.

Payment must be specially pleaded, and those allegations do not constitute the plea of payment. Plaintiffs' counsel himself objected— on that ground—to the introduction of evidence, the object of which was to substantiate those allegations, and his objection was properly sustained by the judge *a quo.* How, then, can he or we now consider

them as pregnant with admission, which Mrs. Dickson was not allowed to rebut?

For nearly five years, the act of the 13th of May remained in the archives, a written and unaccepted proposition from the mother to her sons. What motive prompted that proposition? The evidence, on this point, is replete with irreconcilable contradictions, and—on that account—we pass, without discussing them, every one of the declarations which were objected to.

From the others, we infer that—on or about the 13th of May 1874— Mrs. Dickson had cause to apprehend that suit would be brought to compel her to render an account of the administration of her husband's estate. To prevent her children from joining in the contemplated litigation, she—it is probable—tendered, in settlement of their rights and share in that estate, the obligation sued upon and the mortgage by which it was secured.

The apprehended suit was brought, and plaintiffs' sister testified "that Mrs. Dickson told them that she had given them a mortgage, would do all she could to protect their interest, and asked them not to join the suing creditor." They replied that they preferred to do it and risk their chances.

Hugh and Palmer swore that the consideration of the mortgage was the then presumed, but as yet unsettled indebtedness of Mrs. Dickson, as administratrix of their father's estate, what she and they considered but as a portion of their share in said estate. Palmer was present when the act was signed by his mother, but does not remember or think he was invited to sign it.

It was after the date of that incomplete act, that Hugh and Palmer joined the already-mentioned creditor, and instituted proceedings to hold Mrs. Dickson liable to the succession of her husband, and as administratrix, for nearly four hundred thousand dollars, and to them—if successful in their action—for an amount which would have far exceeded that fixed in defendant's proposition, the straggling acceptance of which was notified to Mrs. Dickson, through counsel, court and sheriff, and when—we imagine—she had entirely forgotten that she had made the proposition.

" The acceptance needs not be made by the same act, or in point of time, immediately after the proposition ; if made at any time before the person who offers or promises has changed his mind, *or may reasonably be presumed to have done so*, it is sufficient."

C. C. 1804, (1798).

In the proceedings alluded to, Palmer and Hugh obtained judgment against Mrs. Dickson for the *full share* inherited by them from their father—and, inasmuch as they themselves swore that the consideration

of the mortgage was *a portion of that share,* they cannot justly hope to obtain an additional judgment for that portion.

They could not have told their mother : "We accept your proposition, but on our own condition, and it is that—in a suit which we are about to bring against you—we shall obtain less than you are willing to give. Until the determination of that suit, you alone shall be bound by that conditionally-accepted proposition." In reason—as in law—their action liberated their mother from her intended and inchoate engagement.

As to the reconventional demand—if maintainable under defendant's pleadings—it is not sustained by the evidence adduced on the trial.

It is, therefore, ordered, adjudged and decreed that the judgment appealed from is affirmed with costs.

Rehearing refused.