(34 South. 112.)

No. 14,301.

THOMPSON v. VANCE et al.

(March 16, 1903.)

COMMUNITY CREDITORS—PRIORITY—DISSOLUTION OF COMMUNITY—TITLE ACQUIRED—MINOR HEIRS—TUTORSHIP—SALE BY SURVIVING SPOUSE — PARAPHERNAL CLAIM — REGISTRATION—TUTOR—DEBTS TO WARD.

1. The principle, repeatedly announced, that community creditors are entitled to a priority on community property over separate creditors of the spouses; that no action of the surviving spouse, in his own name or as tutor, and no act of the heirs, whether of age or not, can deprive the creditor of this right; that the rights of community creditors are paramount to the right of ownership which the surviving spouse had in the property at the dissolution of the community; and that hence no creditor of the spouses can acquire any right upon the property except being subordinated to the payment of the community debts—is again affirmed.

2. When the community is dissolved by the death of one of the spouses, the survivor and the heirs of the deceased become seised of the property. They take the title absolutely, and the title so vested continues in them subject to be divested at any time by the creditors. But such title as they may have they may validly alienate, and the third person who acquires such title takes it to the full extent of the transferror's interest in it.

3. Where minor heirs inherit from their deceased mother a paraphernal claim against the community, and their father qualifies as their tutor, the legal mortgage resulting therefrom in their favor does not absorb their claim as community creditors and alter the character of that claim from one due by the community to one due by their tutor.

4. The rights of community creditors, and the rights of minor heirs against their tutors arising from the tutorship, are absolutely separate, and totally distinct and independent. The former is in the nature of a property right; the latter is a personal one re-enforced by the security of mortgage.

5. The very tenure or character of the interest of the surviving spouse in property incumbered with community debts and charges is concerned in the one case; whereas, in the other, the impression on the property is simply that of mortgage.

6. Where the surviving partner in community sells his interest in the community property, and, as natural tutor, subsequently and by authority of a family meeting, conveys by private sale to his vendee the interest of the minor heirs in the property, the latter, when seeking to subject the portion of the community property coming to their father to the payment of the debt due them by the community, are not estopped from so doing because, in the proceed-

ings looking to the sale of their interest in the property, they neither set up as a defense the defeasible character of their father's interest in the portion of the community property coming to him, and which he had previously sold, nor urged their claim as community creditors.

7. As the minors' rights as community creditors were not and could not be affected by the sale of their father's interest in the property, there was hence no legal right vested in them, and therefore no legal duty imposed on them, to put at issue, at the time of the sale of their interest, either their father's right to sell his interest, or the defeasible character of that interest, or their own claim as community creditors.

8. Registry of a wife's paraphernal claim is only necessary to preserve her legal mortgage quoad third persons. After the dissolution of the community by her death, her heirs, to whom the claim has descended, may enforce it against the community as an ordinary community debt.

9. The right which a community creditor has to be preferred in the payment of his debt out of the proceeds of the sale of community property, being secured neither by privilege nor by a mortgage, technically, registry of the claim is not necessary in order to enable the creditor to enforce it against third persons who have acquired rights on the property.

(Syllabus by the Court.)

Breaux and Monroe, JJ., dissenting.

Appeal from Judicial District Court, Parish of Bossier; John Thomas Watkins, Judge.

Action by Norman F. Thompson against S. W. Vance. Mary Lee Scovel and others, third opponents in an executory process, appeal. Reversed.

In this case his honor Mr. Justice BLANCHARD, being recused, and their honors the Chief Justice and the other Associate Justices being evenly divided in opinion as to the proper determination to be made of the issues involved, Judge ISAIAH D. MOORE, of the Court of Appeal for the parish of Orleans, having been called upon by previous order of this court to sit in the case, pronounced the opinion and judgment of the court.

Thomas Fletcher Bell, for appellants. Wise & Herndon (Farrar, Jonas & Kruttschnitt, of counsel), for appellee Thompson. Alexander & Wilkinson and Holbert & Barret, for appellee Vance.

MOORE, J. This is an appeal by interveners and third opponents, in an executory process, from a judgment rejecting their demand to be paid by priority one-fourth of the proceeds of the sale, on the grounds: That they are creditors of a dissolved matrimonial community, which was the former owner of the undivided one-fourth of the property mortgaged and sold; that the mortgagor acquired by conventional sale this portion of the property from the surviving spouse; that the sale from the surviving spouse to the mortgagor did not deprive opponents, as community creditors, of their right to be paid out of the common property; and that the right of the purchaser and his mortgage creditor is hence subordinated to theirs.

Decision of the right thus asserted by the appellants and opposed by the appellee, the mortgage creditor, and the plaintiff in the cause, turns upon the solution of three questions of law, which we may formulate thus:

First. Where minor heirs inherit from their deceased mother a paraphernal claim against the community, and their father subsequently qualifies as their natural tutor, does the legal mortgage which the minors have on all the property of their tutor absorb the claim of the minors as community creditors, and alter the character of their claim from one due by the community to one due by their tutor?

Second. Where the surviving partner in community sells his interest in the community property, and, as natural tutor, subsequently conveys by private sale to his vendee the interest of the minor heirs, are the latter, when seeking to subject the portion of the community property coming to their father to the payment of the debt due them by the community, estopped from so doing because, in the proceedings looking to the sale of their interest in the property, they neither set up as a defense the defeasible character of their father's interest in the portion of the community property coming to him, and which he had previously sold, nor urged their claim as community creditors? And,

Third. Is registry of a paraphernal and community debt necessary in order to entitle such creditor to priority of payment out of the proceeds of the sale of the community property, no other community creditor asserting any claim to the fund?

The facts which lead up to and present these questions are as follows:

The community resulting from the marriage of S. J. Zeigler with Sallie E. Vance

acquired, in the name of the head of the community, a certain plantation known as "Buck Hall," containing 952 acres, 752 acres of which are in the parish of Bossier, and 200 acres in the parish of Caddo; and subsequently sold the undivided half of the entire plantation to Mrs. Sarah E. Vance, Miss Mollie B. G. Vance, and S. W. Vance, in the proportions of the undivided one-third of one-half to each.

Some time thereafter, the community was dissolved by the death of the wife.

Her legal heirs were Susie, Sadie, Mary Lee, and Vinnie, all minors, and issue of her marriage with S. J. Zeigler.

By her last will she devised to her husband an undivided one-fourth interest in her estate, the balance being left in equal proportions to her children above named.

Two of the children, Susie and Sadie, subsequently died, leaving as their sole heirs their father and their two sisters. The father inherited, under the law, one-fourth of their estate, the other three-fourths falling to their surviving sisters, Mary Lee and Vinnie.

The joint owners, therefore, of Buck Hall at this period, and the proportions owned by them (all of which were acquired either by conventional conveyances or by inheritance), were as follows:

S. E., M. B. G., and S. W. Vance, the undivided one-half, or, say...................... 64/128
S. J. Zeigler,
    1st. The portion **or** share coming
          to him as surviving part-
          ner in community, the one-
          half of one-half, or say of
          the whole ................... 32/128
    2d. The undivided one-fourth of
          his deceased wife's interest
          in the community, devised
          to him by her will........ 8/128
    3d. Inherited by him from his
          two deceased children...... 3/128
                                     43/128

The minors, Mary Lee and Vinnie,
    inheriting from their deceased
    mother 6/128 each, say.............. 24/256
And from their deceased sisters 9/256
    each, say ......................... 18/256
                      42/256 or  21/128
                                    128/128

Zeigler had qualified as the natural tutor of the minors, Mary Lee and Vinnie, but the legal mortgage which resulted from the recordation of the abstract of inventory in the tutorship of said minors, and which mortgage covered the father's interest in this property, was, on the 5th of July, 1887, duly canceled by the substitution of a special mortgage on his certain separate property.

Several days thereafter, Zeigler contracted a second marriage. Thereupon, by the operation of law (Rev. Civ. Code, art. 1755), the interest in the property which he held under his wife's will, as well as the interest which he inherited from his two deceased children, Susie and Sadie, vested in Mary Lee and Vinnie; so that, whilst the joint ownership in the property up to this time had not changed, the respective proportions of S. J. Zeigler and of the minors were, however, disturbed. The entire property, consisting of 952 acres, then stood as follows.

The Vances owning the undivided 1/2 or undivided ......................................... 64/128
S. J. Zeigler owning the undivided 1/4 or undivided ......................................... 32/128
The minors, Mary Lee and Vinnie, each 16/128, or together .................................... 32/128

On the 18th June, 1888, about three years after the death of Mrs. Zeigler, and in this condition of the ownership of the plantation, the Vances and S. J. Zeigler, individually (no account being taken of the interest of the minors in the property; they being no parties to the transaction whatsoever), entered into a notarial act of "exchange" by which the Vances agreed to take the north half and S. J. Zeigler the south half of Buck Hall. This "exchange" or partition, so-called, seems, however, to have been subsequently disregarded by the parties thereto, and treated by them as a nullity, for on the 16th day of June, 1891, S. J. Zeigler conveyed by conventional sale to S. W. Vance "his entire interest" in the whole of Buck Hall plantation, consisting of the 952 acres, which interest is stated in the act to be $43/128$ of the whole.

Two days later, the Vances filed their petition in the district court of the parish of Caddo, in the matter of the "Tutorship of the Minors of S. E. Zeigler," alleging their purchase of the undivided half of Buck Hall during the existence of the Zeigler community; S. W. Vance's subsequent acquisition of S. J. Zeigler's interest therein on the 16th June, 1891, after the dissolution of the community by the death of Mrs. Zeigler; the joint ownership of the minors, Mary Lee and Vinnie Zeigler, in said plantation, which ownership they represent to be $21/128$; their unwillingness to hold said plantation in com-

mon, and their desire to effect a partition by a private sale of the minors' interest, pursuant to Act No. 25, p. 47, of Act of 1878.

Thereupon, order to that effect having been made by the judge, a family meeting was duly convened, and, upon its recommending that the minors' interest in the property, stated to be $21/128$, "be sold at private sale to S. W. Vance, or any one else, for a price not less than $4,680 in cash," judgment to that effect was accordingly rendered.

On the following day, S. J. Zeigler, tutor, conveyed by notarial act the minors' interest in the entire plantation, again represented to be $21/128$, to S. W. Vance, for the sum stated, in cash.

On the same day, Mrs. Sarah E. Vance and Miss Mollie B. G. Vance conveyed, by conventional sale, their interest in the plantation to their joint owner, S. W. Vance.

At this time (June 19, 1891) S. W. Vance was therefore the owner of the whole of Buck Hall plantation, holding titles thereto exclusively by conventional conveyances, except so far as the minors' interest is concerned, which latter, though conveyed to him by private sale, was nevertheless with judicial sanction, and therefore constituted a judicial sale.

On the very day of his purchase of the interest of the minors and that of Mrs. and Miss Vance, S. W. Vance mortgaged 376 acres of the plantation situated in Bossier parish, and 109 acres of it situated in the parish of Caddo, to Norman F. Thompson, to secure notes aggregating $6,985.10 in principal.

Subsequently, S. W. Vance executed a second mortgage on the same portion of this property in favor of S. Levy, Jr., to secure notes aggregating $9,000 in principal. Upon the maturity of these latter notes, the mortgage securing them was foreclosed, and at the sheriff's sale of the property Levy bought it, subject to the Thompson mortgage, and then sold it to S. J. Zeigler for $9,000 on a term of credit, secured by mortgage, with the reservation of the vendor's lien.

Still later, Thompson sued out executory process on his first mortgage, and thereunder the plantation was sold to the Levy heirs for the sum of $11,000 cash.

Thereupon Mary Lee Zeigler and Vinnie Zeigler, both being at this time emancipated by marriage, filed their third opposition in the executory proceedings instituted by Thompson, claiming priority of payment out of the one-fourth of the proceeds of this sale, on the grounds, substantially, that at the time of their mother's death the community was indebted to her in the sum of $20,400, the amount of her paraphernal funds received by her husband, S. J. Zeigler, the opponents' father, and applied by him for the benefit of the community; that the said claim descended to them by inheritance from their mother, and that this indebtedness is recognized by judgments of court in their favor; that the undivided one-fourth of the property sold by the father to S. W. Vance, and by the latter mortgaged, to the extent stated, to Thompson, being community property, their father's rights in it were subordinate to the payment of the community debts; and that as neither Vance nor his mortgagee, Thompson, can acquire any greater right in the property than was possessed by their father, these subsequent alienations of the community property cannot defeat their rights, as community creditors, to be first paid out of the proceeds of sale.

It is conceded that the undivided one-fourth of Buck Hall plantation which was acquired by S. W. Vance by conventional conveyance from S. J. Zeigler is community property; that S. J. Zeigler was indebted to his deceased wife in the sum of $20,400 for paraphernal funds alienated by him; that the opponents inherited this claim, and that the amount thereof has been judicially recognized by judgment in their favor; and it may not be doubted that under this state of facts no alienation of the property by Zeigler could deprive the creditors of the community of their right to subject the property to the payment of their debts.

Upon the dissolution of the community by the death of Mrs. Zeigler, the surviving spouse became seised of the undivided one-fourth of the property, and the title so vested continued in him, subject, however, to be divested at any time by the community creditors. This right of ownership being subordinated to the paramount claims of the community creditors, the rights of an alienee of the surviving spouse necessarily became subordinated to the rights of the community creditors.

When, therefore, Vance purchased Zeigler's interest in the property, he acquired no greater rights therein than the latter had, which was simply the residuum, and when he mortgaged it to Thompson the latter took the mortgage cum onere, and can enforce it only to the extent of his mortgagor's interest.

These consequences result from a long line of decisions which have rock-bedded in the jurisprudence of this state the principle that community creditors are entitled to a priority on community property over separate creditors of the spouses; that no act of the surviving spouse, in his own name or as tutor, and no act of the heirs, whether of age or not, can deprive the creditor of this right; that the rights of community creditors are paramount to the right of ownership which the surviving spouse acquired in the property at the dissolution of the community; and that, hence, no creditor of the spouses can acquire any right upon the property except being subordinated to the payment of the community debts. German v. Gay, 9 La. 583; Hart v. Foley, 1 Rob. 378; Depas v. Riez, 2 La. Ann. 30; Ware v. Jones, 19 La. Ann. 428; Succession of Tureaud v. Gex, Adm'r, 21 La. Ann. 253; Succession of Ogden, 10 Rob. 457; Cestac v. Florane, 31 La. Ann. 493; Durham v. Williams, 32 La. Ann. 162; Tugwell v. Tugwell, 32 La. Ann. 848; Durham v. Williams, 32 La. Ann. 968, 973; Dickson v. Dickson, 32 La. Ann. 272; Webre v. Lorio, 42 La. Ann. 179, 7 South. 460; Newman v. Cooper, 46 La. Ann. 1485, 16 South. 481; Zeigler v. His Creditors, 49 La. Ann. 186, 21 South. 666; Ealer v. Lodge, 36 La. Ann. 117.

Conceding, arguendo, the correctness of the doctrine taught by these authorities, the appellee contends, however, that the instant cause falls without the operation of the general rule affirmed by the cases cited, forasmuch as the opponents' natural tutor had lawfully, and prior to the sale of his interest in the plantation to Vance, substituted a special mortgage on specific property for the general mortgage in favor of the minors, thus freeing from the operation of the latter mortgage the interest in the property which came to him upon the dissolution of the community, and that in consequence the opponents ceased, eo instante, to be community creditors, and thenceforth their rights, whether as community creditors or otherwise, were merged in the special mortgage, and restricted to the property thus hypothecated.

It is further argued that the opponents are likewise barred from the exercise of the right of subjecting the community property to the payment of the debt averred, because, being duly represented by their tutor, and the proceedings being properly authorized by a family meeting, they were parties to a partition proceeding by which the plantation was sold, and in which proceedings neither the defeasible character of their father's interest in the property, nor their own claim as community creditors, was urged; that, as in a suit for a partition the defendants should urge all their available defenses, they should then have urged what they now do, and their failure so to do now estops them from asserting the rights claimed; and, finally, that in no event can they recover because of the nonregistry of the paraphernal claim of their mother, and which was inherited by them.

The fundamental error of the first contention consists in confounding the rights of community creditors with rights of minors growing out of the tutorship, and in the assumption that the general mortgage which minors have on all property of their tutors, resulting from the recordation of the abstract of inventory taken in the succession to which they are heirs, absorbs, alters, or in any other manner affects their rights as community creditors, if by the mere accident of the case, as it is here, the minor heirs should likewise be community creditors.

The rights of community creditors, and the rights of minor heirs against their tutors arising from the tutorship, are absolutely separate, and totally distinct and independent. The former is in the nature of a property right; the latter is a personal one, re-enforced by the security of mortgage.

The very tenure or character of the interest of the surviving spouse in property incumbered with community debts and charges is concerned in the one case; whereas, in the other, the impression on the property is simply that of mortgage.

The rights of community creditors, as we have said, exist independent of the tutorship. If no tutor had ever been appointed and qualified, the minors' rights as community creditors would still have existed. The

appointment of the tutor neither added to nor detracted from such rights, unless the argument could be admitted that upon the qualification of the tutor there resulted a legal forced payment of the community debt from himself as debtor to himself as tutor, wiping out thereby the minors' rights as community creditors, which were inherent in the community property and affected the very tenure itself of the ownership thereof, thus making payment to the children of this debt dependent upon and following the fate of the minors' mortgage. This argument cannot be admitted. Pertuit v. Damare, 50 La. Ann. 893, 24 South. 681; Succession of Kidd, 51 La. Ann. 1157, 1166, 26 South. 74.

In Zeigler v. His Creditors, 49 La. Ann. 173, 175, 21 South. 666, 678, this court had occasion to consider this question, and concerning this same property and the same community creditors. The inquiry as to the rights of these community creditors was there gone into fully, and in the course of our review of their asserted rights we said:

"If we assume as correct the statements that at the time of the death of Mrs. Sallie Vance Zeigler the community was indebted to her in the sum of $32,040.00, and that sum has not been paid, the consequence, declared by the court, would follow, that, the husband's rights in the community property being subordinated to the payment of the community debts, no creditor of his could acquire rights upon the property except being also subordinated to the payment·of the community debts. In Ealer v. Lodge, 36 La. Ann. 117, this court said that 'no act of the widow in her own name or as tutor, and no act of the heirs, whether of age or not, could deprive the creditor of the community to his right to be paid out of the community property in preference to any right of ownership which the widow or heirs acquired thereto at· the dissolution of the community.' It has been repeatedly held that community creditors are entitled to a priority on community property over the separate creditors of the spouses.

"This preference is secured neither by a privilege nor by a mortgage technically, but is the result of the tenure or character of the interest of the spouses in the property. It is analogous to the right of preference of partnership creditors over the creditors of the individual partners. Let us suppose the case of a wife dying to whom the community is indebted thirty thousand dollars or forty thousand dollars; that the husband should have qualified as tutor of his minor children, and, after placing of record an inventory which carried with it, by its registry, a general mortgage in favor of his minor children as security of their rights, should have caused the general mortgage to be restricted to specific property, and a special mortgage to have been additionally given on the same property, but the balance of the property freed from the mortgage of any kind.

"Would the question of mortgage vel non on the father's property control the question of the extent of the rights of his minor children in the community property, or determine what their right of payment out of that property would be as compared with the right of the creditors of their father to be paid out of that property? Undoubtedly not. Their right is not only based upon the fact of being creditors, but upon the fact that their father's rights (and therefore the right of any one holding under him) are conditioned upon an adjustment or settlement of the community, and in this settlement the wife, holding a claim against the community, would stand, quoad any separate creditor of the husband, as any other creditor of the community. So long as the community is not liquidated or settled, the children have a claim upon community property for the debts due them by the community, a protection really higher and greater than through either mortgage or privilege. Registry is not necessary for this protection. It springs, as we have said, from the tenure itself under which the property is held.

"In the case of Le Bleu et al. v. North American Land and Timber Company et al., 46 La. Ann. 1465, 16 South. 501, we were called upon to explain the difference between a minor's right as resulting from ownership and that resulting from the liability of the tutor on his property through the tutorship. Property rights in that case were shown to be totally independent of the liability of the tutor as secured by mortgage. In this case the rights of the minors, as creditors of the community, are so interconnected with the property rights involved that they cannot be dissevered."

Another case in which the difference between the property rights of minors and those growing out of the tutorship is explained is that of People's Bank v. David, 49 La. Ann. 136, 21 South. 174. In that case certain property belonging to a succession had been sold for cash, to effect a partition between major and minor heirs. At the sale the major heirs became the adjudicatees, but no cash was paid by them, they having retained the amount of their bid under the right accorded them by articles 1343 and 2625 of the Revised Civil Code.

Subsequently the major heirs mortgaged the property to the People's Bank, and upon foreclosure of the mortgage the property was sold and the proceeds realized. Thereupon the minor heirs intervened in the proceedings, and, alleging the invalidity of the bank's mortgage in respect to their rights, claimed to be decreed entitled to receive their distributive share from the proceeds. The contention on behalf of the bank was that the mortgage, having been acquired on the faith of the recorded titles of the major heirs, was not affected by any irregularity in the partition, or frauds of the major heirs; that, if the minors had any rights on the property securing payment to them of the amount coming to them from the partition, they were rights of mortgage or privilege, and required registry to preserve them against third parties; and the argument maintained that, in view of the duty of the tutor to protect the rights of the minors in the partition proceedings, the recourse of the minors should be on him, and not against the bank, the mortgagee in good faith. The conclusion reached by this court was that the rights of the minors under these facts were neither of mortgage nor of privilege, technically, but rights which were inherent in the property, affecting the very tenure itself of the ownership; and the court maintained the action of the minors, and accordingly awarded them their distributive share out of the proceeds of the sale by priority over the mortgage creditor.

See, also, Railroad Co. v. Fairex, 46 La. Ann. 1022, 15 South. 421.

And in Succession of Kidd, 51 La. Ann. 1157, 26 South. 74, where the identical question was presented as is here discussed, this court held that "a debt of the husband to the wife, transmitted to the son as the heir of his mother, retains its separate, independent character, and is not merged, by reason of the father's qualifying as the minor's tutor after the mother's death, into the tutorship liability for funds and property belonging to his ward received by him during the tutorship."

Nor is there any merit in the objection, secondly urged, to the effect that the opponents are estopped from enforcing their rights as community creditors by reason of their failure to urge, in what is called the "partition suit" brought by Vance, the rights which they are presently asserting.

It may be conceded, for the argument, that, if the entire plantation had been partitioned by licitation in proceedings to which the opponents were parties, the rule of law which is invoked, that the decree in such proceedings concludes all parties therein from any attack on the plaintiff's title, would apply.

But here this rule finds no application, forasmuch as no such suit was instituted and no such sale took place. The proceedings, as we have seen, looked to the sale only of the minors' interest, and their interest alone was sold thereunder.

It was not a public sale, but a private sale differing in no respect whatsoever from Vance's prior and subsequent acquisitions of the interest of the several joint owners of the property, and by which acquisitions he became the owner of the whole plantation, except that in the case of the opponents, they being minors, the sale of their interest was authorized by a family meeting. Besides this, the entire argument on this branch of the case, and which seeks the application of the rule supra, is based on the theory that here the community creditors are seeking the nullity of Vance's title to Zeigler's interest in the property, and that this right to recover the community debt depends, necessarily, upon that sale being set aside.

If, after the dissolution of the community, the surviving spouse or the heirs of the deceased partner in community were, prior to the liquidation and settlement of the community debts, inhibited from alienating the community property coming to them, then it would result that, if a creditor of the community, either by his silence at a time when it was his duty to speak, or by his deeds or

by other means, acquiesces in the alienation by either the surviving partner or by the heirs, or by both, he would thereby be estopped from asserting rights prejudicial to those acquired by third persons and resulting from such alienation. The alienation in such case would have been made, and could have been made, only as a result of the consent, expressed or implied, of the community creditor, in which event estoppel, as we have said, would intervene to defeat his claim. But such is not the law as to community property.

When the community is dissolved by the death of one of the spouses, the survivor and the heirs of the deceased become seised of the property. They take the title absolutely, and the title so vested continues in them subject to be divested at any time by the creditor; but such title as they have they may validly alienate, and the third person who acquires such title takes it to the full extent of the transferror's interest in it. As said by this court in Webre v. Lorio, 42 La. Ann. 179, 7 South. 460: "There is nothing in the jurisprudence of this state, in the Code, or the decisions of the courts, to prevent the surviving spouse from disposing of his or her part of the community property;" and in Newman v. Cooper, 46 La. Ann. 1485, 16 South. 481, "the mortgage or alienation of the share of the survivor is not null;" and to the same effect are the authorities cited on the proposition first discussed by us supra. The extent to which such mortgage or alienation is enforceable is, however, another matter.

When Zeigler, prior to the sale of the minors' interest, sold to Vance his interest in the plantation, there was no legal duty imposed on the minors to prevent the sale, nor indeed was any legal right vested in them so to do. They could not have legally prevented it. Nor could they have successfully defeated the right of Vance to provoke, in the manner he did, a sale of their interest in the property, on the ground that his acquisition of Zeigler's interest was a nullity, or that the title thereto was defeasible, or that their claim upon the property so acquired was paramount to any rights of the purchaser.

The answer to them in such event would have been: "Your rights, if any you have as community creditors, are not divested by the sale, as Vance, under the law, has acquired no rights on the property which are not subordinated to the payment of the community debts. You may enforce your rights as community creditors in proper proceedings; but in the meanwhile Vance, as joint owner of the property with you, is entitled to dissolve the common ownership of the property." And, so far as these objections are concerned, the sale of Zeigler's interest would have remained undisturbed, and the sale of their interest would have been ordered, as it was. It follows, therefore, that, as there were no allegations in Vance's petition for the sale of the minors' interest which, although the minors be held bound to the truth of them, could affect their rights as community creditors, and as they were not required at that time to assert any such rights, there cannot possibly result an estoppel.

As to the contention that the paraphernal claim of the deceased wife, as well as the subsequently inherited rights of the minors to that claim, by which they became community creditors, are not enforceable, quoad third persons, by reason of their nonregistry, the answer is that registry of the wife's paraphernal claim would only be necessary if any right of mortgage was asserted thereunder to the prejudice of other community creditors. In a contest between the wife, or, as it is in this case, her heirs, and other community creditors, the paraphernal creditor, by reason of the failure to record that claim, could assert no right on the property superior to that of the other ordinary community creditors. But here there is no such conflict, nor is any right of mortgage claimed for that paraphernal debt. The claim is asserted simply as an ordinary community debt, ranking only equally with other debts, if any there be, of the community.

What we have said in reference to the first contention of the appellee disposes of the question of the necessity for community creditors, generally, to record their claims so as to render them enforceable against third persons who acquired rights on the property. The right which a community creditor has to be preferred in the payment of his debt out of the proceeds of the sale of community property is, as we have said, secured neither by privilege nor by mortgage, technically, but is the result of the tenure or character of

the interest of the spouses in the property. The law affords such creditors a protection really higher and greater than that afforded by either mortgage or privilege.

Our conclusion is, therefore, that the claim of the opponents to be paid by priority out of the proceeds of the sale of Zeigler's interest in the property must be maintained, and to that end the judgment must be reversed.

There is left now, however, for consideration the claim urged by the appellee, Thompson, to be reimbursed the amount of state and parish taxes on the property alleged by him to have been paid, and which taxes he claims he is entitled to receive out of the proceeds of the sale before any distribution thereof is made to the opponents. The rights of the state and parish for such taxes, it is alleged, were duly subrogated to him. The taxes alleged to have been paid by him aggregate the sum of $691.66, and are for taxes for several years preceding the seizure of the plantation under his (Thompson's) mortgage.

There can be no doubt that the distributive share of the parties entitled to the fund realized from the sale of the property is to be based on the surplus which is left after deducting from the fund the costs of court and all expenses necessary to the sale, as well as all taxes, both state and parish, then due, or which, for previous years, have been paid by third persons to whom the rights of the state and parish have been subrogated.

If, therefore, Thompson has paid such taxes, he is entitled to have same paid to him out of the fund before any distribution is made to the opponents herein.

We find, however, that the evidence in the record on this branch is too meager to warrant any decree fixing the amount alleged to be so paid. Receipts for all the years claimed with subrogation of the right of the state and parish to the person paying same are in the record; but we discover that one of the receipts is for taxes not due on the property in question, but on an entirely different property; that another receipt and subrogation is in the names of Foreln and Ruiem; and that three others are in the name of the Equitable Security Company.

It may be that these payments were made by these parties as the agents and representatives of Thompson, or, if not, that their rights have been transferred and assigned to him. At any rate, the record furnishes us with no evidence to warrant the fixing of the amount; but in order that such rights, if any, which Thompson may have to recover these taxes may not be jeopardized, we will reserve him in our decree the right to test, by rule, or by other proper proceedings, his claim therefor.

It is therefore ordered, adjudged, and decreed that the judgment herein appealed from be avoided, reversed, and set aside; and it is now ordered, adjudged, and decreed that the appellants, Mary Lee Zeigler, wife of Custis Scovell, and Vinnie Zeigler, wife of Charles Gaines, do have judgment declaring them entitled to be paid, by priority over the seizing creditor, one-fourth of the entire fund now in the hands of the sheriff of the parish of Bossier, and arising from the seizure and sale of the property foreclosed in this suit, after deducting therefrom all taxes due on the property, costs of court, and other expenses necessary to the seizure and sale of the property. The rights of the plaintiff and appellee herein to claim by rule, or other appropriate proceedings, payment out of the said fund, by preference, by reason of state and parish taxes alleged to have been paid by him, are reserved.

The costs of the lower court incurred in the trial of the intervention and third opposition, as well as the costs of appeal, to be paid by the plaintiff and appellee.

See concurring opinion of PROVOSTY, J., 34 South. 119.

See dissenting opinion of BREAUX, J., 34 South. 121.

MONROE, J., also dissents.