**MOORE v. BLOUNT. \***

No. 4991.

Court of Appeal of Louisiana. Second
Circuit.

April 1, 1935.

· Edward Barnett, of Shreveport, Tucker &
Mason, of Shreveport, for appellant Blue-
stein.

Foster, Hall, Barret & Smith, of Shreve-
port, for appellee.

319

TALIAFERRO, Judge.

Hearsey Moore, plaintiff, is the sole heir of his grandfather, Sam Kendall. While living with his third wife, Leander Cox, Sam Kendall acquired title to lot 10 of Lincoln Heights subdivision, city of Shreveport, La. He entered into a written contract with H. L. Heilperin to purchase the lot on December 4, 1912, for $550; $50 cash, and the balance in monthly installments of $10, beginning February 1, 1913, with 8 per cent. interest. The balance of the price having been paid prior to December 4, 1920, deed was made to Kendall on that date.

Plaintiff's status as sole heir of Sam Kendall, and that said property became an asset of the community of acquets and gains between Kendall and Leander Cox, was recognized and fixed by the Supreme Court in the case of John Kendall, Adm'r, v. Leander Kendall, reported in 174 La. 148, 140 So. 6. It is held therein that plaintiff owned a one-half interest in said lot and that the surviving widow, Leander Kendall, owned one-half interest. The recognition of this ownership was made subject to the administration and payment of debts of the succession of Sam Kendall, deceased, which was then open in Caddo parish. It was further decreed that John Kendall, administrator of said succession and tutor of plaintiff, then a minor, have judgment against the community existing between Sam Kendall and Leander Kendall for all sums paid by Sam Kendall on the price of said lot after his divorce from his second wife, Vassie Monroe, December 8, 1913, and prior to his marriage to Leander Cox, June 23, 1918. This amount is shown to have been $269.

On June 8, 1928, three months after Sam Kendall's death, Leander Kendall executed a promissory note for $250 to the order of herself, which she indorsed in blank, and gave mortgage on said lot and improvements thereon to secure its payment. The mortgage was duly recorded, and the note was acquired by M. Bluestein. The note not being paid at maturity, Bluestein foreclosed thereon, and at sheriff's sale Archie Blount, defendant in the present case, became the purchaser of the property for $450. The sheriff's deed is dated August 10, 1929. This was over three years prior to the decision of the Supreme Court above mentioned.

Plaintiff, arriving at majority, instituted this suit against Blount, who is in actual possession of the lot, to recover an undivided one-half interest therein and like interest in the buildings and improvements thereon, as the sole heir of Sam Kendall, deceased, and prayed for partition thereof by licitation. He concedes that defendant owns the other one-half interest in the property, but avers that said ownership is subject to, and charged with, "the judgment in favor of petitioner against the community existing between Sam Kendall and Leander Kendall for the sums paid by Sam Kendall between December 8, 1913, and June 23, 1918, amounting to $279.00." He further prays for judgment against Blount for $180, or one-half of the rents he is alleged to have collected from said property from August 10, 1930, to the filing of this suit, and for further judgment for one-half of the rents which he may thereafter collect for the use of the property, with legal interest thereon from judicial demand. He finally prays that out of the proceeds of sale of the property he be paid one-half thereof, after deducting costs; and from the other half of said net proceeds, accruing to Archie Blount, he be paid the sum of $279, being the aggregate of the sums paid by Sam Kendall between December 8, 1913, and June 23, 1918, on the price of said lot, and that he be paid the further sum of $180 from said net proceeds coming to Blount, being one-half of rent collected by him to August 10, 1930.

Defendant excepted to the petition on the ground that it disclosed no cause and no right of action. The exception was overruled; answer was filed. All the allegations of fact contained in the petition are denied. It is admitted that Leander Kendall was the surviving widow in community of Sam Kendall, deceased, and that defendant purchased said property at sheriff's sale on August 10, 1930. It is specially denied that Sam Kendall and his second wife, Vassie Monroe, were legally divorced; but it is admitted that she instituted a certain proceeding against him for divorce in Bossier parish while they were residents of Caddo parish, and judgment, purporting to be a final decree of divorce was rendered therein. This decree is attacked as being null and void on the ground that the court in Bossier parish had no jurisdiction of the cause, ratione personæ and ratione materiæ. In passing, it is well to note that, if these allegations were well founded in law, Leander could not be the lawful surviving widow of Sam Kendall, a fact admitted by defendant in his answer. However, this defense has been abandoned, in view of the decision in Russell v. Taglialvore, 178 La. 840, 152 So. 540.

Defendant further avers that he acquired said property in good faith, and has erected a

residence thereon at a cost of $1,007.07, but that he would not have bought it had he known he was only acquiring one-half interest therein; that, in the event he is evicted therefrom, he should have judgment against plaintiff for the cost of said residence. He called the foreclosing creditor, M. Bluestein, and Leander Kendall, in warranty, and prayed for judgment against them in solido for $450, the price bid by him for said lot, with legal interest from date of sheriff's deed to him. Leander could not be found by the sheriff. No service was made on her. She is not before the court now.

M. Bluestein, warrantor, adopted all the pleas and defenses filed and urged by defendant Blount. He additionally averred that he acquired the note foreclosed on in good faith, believing that the mortgage debtor, Leander Kendall, owned the property in dispute in its entirety; that of the price of the sheriff's deed to Blount this warrantor was only paid $273, $27 of said amount being applied to payment of court costs, and the remainder of $150 being retained by Blount to satisfy prior existing liens and privileges against the property; that, in the event plaintiff should be decreed the owner of one-half interest in said lot, defendant is not entitled to recover from this warrantor, as seizing creditor, any sum in excess of $136.50, being one-half the amount realized by him from proceeds of said sheriff's sale to defendant.

The judgment of the lower court is as follows:

"It is ordered, adjudged and decreed that there be judgment herein in favor of plaintiff, Hearsey Moore, and against the defendant, Archie Blount, recognizing plaintiff as the owner of an undivided one-half interest in Lot 10 of the Lincoln Heights Subdivision, city of Shreveport, Caddo Parish, Louisiana, together with all buildings and improvements thereon.

"It is further ordered, adjudged and decreed that there be judgment herein in favor of plaintiff, Hearsey Moore, and against the defendant, Archie Blount, in the sum of $269.-00, and the further sum of $180.00 for one-half the rentals collected by the said defendant during his possession of said property, together with legal interest on said amounts from judicial demand until paid.

"It is further ordered, adjudged and decreed that there be judgment herein in favor of the defendant, Archie D. Blount, and against the plaintiff, Hearsey Moore, in the sum of $500.00, for improvements placed upon said property.

"It is further ordered, adjudged and decreed that there be judgment herein in favor of the defendant, Archie D. Blount, and against M. Bluestein, warrantor, in the sum of $273.00.

"It is further ordered, adjudged and decreed that there be judgment herein in favor of plaintiff and against the defendant, Archie D. Blount, decreeing a partition by licitation of the above described property, and that the said property be sold by the Sheriff and Ex-Officio auctioneer of Caddo Parish, Louisiana, in accordance with law in order to effect said partition, and that out of the proceeds of said sale, after first deducting the costs, that plaintiff and defendant be paid the proceeds of said sale in the proportion of one-half each, after first deducting the amount of the judgments herein against plaintiff and defendant."

Marx Bluestein, warrantor, and defendant prosecute appeals from this judgment.

Defendant persists in the exception of no cause and no right of action filed in limine by him. This exception is leveled at the failure of plaintiff to deraign his title. The two articles of the petition touching the question of ownership and title to said lot read as follows:

"I. That petitioner is the owner of an undivided one-half interest in: Lot 10 of Lincoln Heights Subdivision, City of Shreveport, Caddo Parish, Louisiana, together with all improvements and buildings thereon, having acquired said property by inheritance from his deceased grandfather, Sam Kendall, and having been recognized as such by judgments in proceedings entitled, John Kendall, Tutor and Administrator, v. Leander Kendall, being No. 50,124 on the docket of this Honorable Court, and Id., as reported in 174 La. 148, 140 So. 6.

"II. Petitioner shows that Leander Kendall was recognized as the surviving widow in community of Sam Kendall, deceased, and as such the owner of the remaining undivided one-half interest in said above described property, subject to a judgment in favor of John Kendall, Administrator of the Succession of Sam Kendall, deceased, and Tutor of Hearsey Moore, Jr., against the community existing between Sam Kendall and Leander Kendall, for all sums paid by Sam Kendall, deceased, on Lot 10 of the Lincoln Heights Subdivision, City of Shreveport, Caddo Parish, Louisiana, from December 8, 1913, to June 23, 1918, which sums petitioner shows amounted to $279.00."

■ It is clearly disclosed from these allegations that plaintiff's interest in the lot described came to him by inheritance from Sam Kendall, and it is equally clear that he concedes that the other half interest in said lot was acquired by Leander Kendall as the surviving widow of Sam Kendall, which interest, it is admitted, defendant acquired at the foreclosure sale provoked by M. Bluestein. Therefore it is obvious that the title of both parties is traceable to a common author, viz., Sam Kendall, as the head and master of the community of acquets and gains superinduced by his marriage to Leander Cox, and beyond this it was not necessary to declare muniments of title. Defendant's counsel argue that a plaintiff in an action for partition against one in possession occupies the same position as does a plaintiff in a petitory action, and this is generally true, especially where his alleged ownership is denied; but, as here, when the allegations disclose a state of record facts, out of which springs not only the genesis of plaintiff's own title, but also that of his opponent, this is sufficient to repel the charge that the petition does not disclose a cause or right of action on the ground that title is not deraigned. Why go back of the title of the common author? To do so would be redundant.

The petition may be amenable to an exception of vagueness, in some respects, but such was not filed. A prayer for oyer would have caused the production of any pertinent papers or documents which defendant desired to view for the purposes of his defense. This course was not adopted.

The ruling in Hammonds v. Buzbee, 170 La. 573, 128 So. 520, 521, fits the present case admirably, to wit: "The exception of no cause of action is based upon the fact that plaintiff, in alleging her ownership of the property, does not deraign her title. The exception was overruled. We find no error in the ruling. While it is true that the allegation of ownership is vague, nevertheless sufficient is alleged to show a cause of action. If defendants wished to avail themselves of the vagueness of the petition, they should have filed an exception of vagueness and not have substituted for it an exception of no cause of action."

The exception was properly overruled.

■ The defendant takes the position that he is not bound by the decision in the case of Kendall v. Kendall, 174 La. 148, 140 So. 6, because no notice of lis pendens was recorded in the mortgage book, as is provided by Act No. 22 of 1904. We are unable to perceive wherein defendant can profit, or has sustained injury, because of the nonregistry of the lis pendens notice. He does not presume to say that, because of this omission, his interest in the property has been increased to any extent, and certainly such did not result from the omission. Leander Kendall had no title whatever to the property, save that which was recognized by the final judgment in the very litigation, the lack of record notice of the pendency of which defendant is striving to take advantage.

The judgment referred to is simply a judicial recognition of the existence of her interest, and that of plaintiff, in the property in question. Both interests became fixed by operation of law the moment Sam Kendall died. The judgment only recognized a pre-existing status; it did not create title. It is indivisible. If it benefits one, it necessarily benefits the other. It is not contended that plaintiff does not own one-half interest in the lot. It is not contended that defendant owns the entirety of the lot. It is not denied by any party to this suit that the allegations of plaintiff's petition on the question of vested ownership of the lot are not true. This being so, it could not seriously be argued that failure to record notice of lis pendens to any extent affected the rights of any one who had a proprietary interest in the lot.

■ It was not the purpose or intention of this act to divest any one of a vested right in real estate, disclosed by the record, because of the noncompliance therewith. It was the intention of the law that by registering notice of lis pendens, as therein provided, third persons would be constructively, if not actually, apprised of the existence and nature of such rights as were the subject of or involved in the suit.

■ If the judgment were entirely eliminated from consideration, where would defendant stand? His interest in the property necessarily is traced to the right of the surviving widow, Leander Kendall, therein, and beyond that he cannot go. He cannot be heard to challenge the verity of the origin of his own title.

■ What we have said supra as to the impotency of the position taken by defendant on the issue of nonregistry of the notice of lis pendens relates primarily to the question of title to the property involved. The law is even clearer, and more definitely pronounced, that sales of or mortgages on community property by the surviving spouse are always made or given subject to the paramount

claims of community creditors. The rights of an alienee of the surviving spouse necessarily become subordinated to the rights of the community creditors. This doctrine, as was said in Thompson v. Vance, 110 La. 26, 34 So. 112, 118, is embedded in our jurisprudence by a long line of decisions. In this case, the court made it clear that to affect community property in the hands of third persons, with community obligations, it was not necessary that the evidence of such obligations be registered. It said: "What we have said in reference to the first contention of the appellee disposes of the question of the necessity for community creditors, generally, to record their claims so as to render them enforceable against third persons who acquired rights on the property. The right which a community creditor has to be preferred in the payment of his debt out of the proceeds of the sale of community property is, as we have said, secured neither by privilege nor by mortgage, technically, but is the result of the tenure or character of the interest of the spouses in the property. The law affords such creditors a protection really higher and greater than that afforded by either mortgage or privilege."

In Webre v. Lorio, 42 La. Ann. 178, 179, 7 So. 460, the court said: "The sale of the wife's community property transfers all of her rights and interest to said property. The purchaser, however, acquires no greater right to said property than the widow in community had to the same. It passes subject to community debts and the right of the creditor, through an administrator, to manage the same for the payment of these debts."

Therefore, when defendant acquired the property in question, he did so subject to the debt the dissolved community between Sam Kendall and Leander Kendall was due to plaintiff as the sole heir of Sam Kendall. This, in principle, was recognized by the judgment of the Supreme Court, referred to supra.

When defendant acquired deed to the lot in question, there was on it an old two-room building, the roof on which leaked badly. Its general condition was so bad that it really had little or no rental value. Defendant never lived in it, and the testimony convinces us that he collected no rents from any one for its use. A man moved into it without defendant's permission, and thereafter promised to pay 50 cents per week for the privilege of living in it, but did not comply with the agreement. Evidently defendant permitted him to occupy the building more as keeper than as tenant. This arrangement continued until October 1, 1932, when the old house was demolished by defendant and a new one constructed in its place, at a cost of slightly more than $1,000. He has occupied it since November 1, 1933, but leased it to tenants prior to that date. Of course, he cannot be charged for the use of the building he erected at his own expense, even though the lot on which it stands is in part owned by plaintiff. There is no evidence in the record to indicate the value of the use of the lot itself since the new house was built. The lower court gave plaintiff judgment for $180, referred to as being "one-half the rental collected by defendant during his possession of the property." The testimony does not sustain this finding. Aside from this, defendant's good faith is not assailed. Bad faith is never presumed. Restitution of rents is due by the possessor in good faith only from time of demand therefor. Civil Code, art. 3453.

As stated before, Sam Kendall paid on the price of the property in question $269 between December 8, 1913, and June 23, 1918, the date of his marriage to Leander. This was a liability of the community between these married persons to Sam Kendall, individually, and was inherited by plaintiff as the sole heir of Sam Kendall, but, as plaintiff owned one-half of the community property, to that extent the debt was extinguished by confusion. Leander's interest in the community property, now owned by defendant, is charged with one-half of said amount only. The judgment appealed from decreed that defendant was responsible for the whole amount and gave plaintiff award accordingly. It will have to be amended by reducing the amount to $134.50, with interest.

The lower court evidently found the improvements erected by defendant on the lot to have cost $1,000, as contended for, as defendant was given judgment against plaintiff for one-half of that amount, or $500. We are of the opinion that it was error to award defendant a personal judgment against plaintiff for one-half of the value of these improvements. Had plaintiff recovered the entirety of the lot, a different case would be presented, as defendant, being in good faith, would be entitled to be reimbursed the value of the materials and the price of workmanship, or to be reimbursed a sum equal to the enhanced value of the soil. Civil Code, art. 508.

Plaintiff seeks a partition of the lot owned in equal shares between him and defendant. He is entitled to this relief and be paid one-half of the price of the sale thereof. He has

no real interest in the improvements erected by defendant. Defendant is entitled to be paid one-half of the proceeds of the sale of the lot and all the proceeds of the sale of the improvements constructed thereon by him, subject, of course, to deduction of the amount of money judgment rendered herein against him.

█ As regards the manner and mode of effecting judicial partitions, the courts have considerable discretion. It is said in Grouchy v. Williams, 161 La. 909, 109 So. 545, 547: "It is, however, within the province of the judge who directs the partition to regulate the mode of effecting it; but this he should do in the manner which appears most advantageous for the general interest of the co-owners. R. C. C. art. 1336."

This leaves for decision the rights of defendant against Bluestein, warrantor. Article 711 of the Code of Practice reads: "However, if the purchaser has been evicted from the thing adjudged to him, on the ground that it belongs to another person than the party in whose hands it was taken, he shall in that case have his recourse for reimbursement against the seized debtor and the seizing creditor; but upon the judgment obtained jointly for that purpose, the purchaser shall first take execution against the debtor, and upon the return of such execution, no property found, then he shall be at liberty to take out execution against the creditor."

█ In view of the language of this article, and of the fact that Leander Kendall is not before the court, no service having been made on her, it is the contention of the warrantor that no personal judgment may now be rendered against him in favor of defendant; that the failure to give Leander notice of the pendency of this suit precludes rendition of any judgment against him in the case, and he argues that the only judgment that may be rendered in a case of this character is a joint one against both the seizing creditor and debtor, and that this cannot now be done. Service on Leander was prayed for by defendant. The return of the sheriff on citation addressed to her discloses that after diligent search she could not be found. Beyond this, the record contains no information touching her whereabouts. She may be living in Caddo parish, or in some other part of the state, and own property subject to seizure. We think the warrantor's position well taken. The right to call the seizing creditor in warranty is of statutory origin. This course is available to the evicted purchaser only when the mortgage debtor is made a party to the call in warranty. Any judgment rendered against them shall be joint, and no execution lies thereon against the creditor until due effort has been made to realize from property of the debtor. Haynes v. Courtney, 15 La. Ann. 630; Gaines v. Bank, 4 La. Ann. 369; and Gaines v. Bank, 2 La. Ann. 479.

The judgment against the warrantor will be reversed and a nonsuit entered on the call in warranty.

Considering the several changes and amendments we have found necessary to make in the judgment appealed from, we deem it the better course to recast it in its entirety.

For the reasons herein assigned, it is ordered, adjudged, and decreed that there be judgment herein in favor of plaintiff and defendant recognizing each of them as owning an undivided one-half interest in lot 10 of the Lincoln Heights subdivision, city of Shreveport, Caddo parish, La., and that defendant, Archie Blount, be, and he is hereby, recognized as the owner of all the improvements on said lot.

It is further ordered, adjudged, and decreed that plaintiff have and recover judgment against defendant, Archie Blount, for the sum of $134.50, with legal interest thereon from judicial demand herein until paid.

It is further ordered that the judgment in favor of defendant and against M. Bluestein, warrantor, be, and the same is, hereby annulled and set aside, and there is now judgment dismissing the call in warranty herein as of nonsuit, with full reservation to the parties thereto of all their legal rights and defenses.

It is further ordered, adjudged, and decreed that the said lot and improvements thereon be sold as a unit by licitation to effect a partition thereof in the manner provided by law, that prior to such sale the lot and improvements be separately appraised, and that the proceeds of the sale of the lot and improvements be distributed as follows, after payment of costs as herein taxes, to wit: To defendant, Archie Blount, that proportion thereof which the appraised value of the improvements bears to the total appraised value of lot and improvements, less the judgment for $134.50 and interest in favor of plaintiff; the balance of said proceeds to be paid over to plaintiff and defendant in equal parts; that costs incurred by the call in warranty be paid by defendant; all other costs to be paid from the proceeds of sale of the lot and improvements.