No. 13,016.

TUTORSHIP OF MINOR HEIRS AND SUCCESSION OF JAMES I. KIDD, DECEASED.

SYLLABUS.

1. A minor on reaching majority is required to have recourse to an action for an account to have recognized and enforced a claim against his father of monies of his received by the father during tutorship, but not for a claim for a debt due to his mother transmitted to the minor by inheritance from her for paraphernal funds received by the husband and converted to his own use during the marriage. The prescription of four years provided for by Art. 362 of the Civil Code applies to claims of the former but not of the latter character.

2. No fixed rule can be formulated for the ascertainment of the existence and the extent of the liability of the community to the succession of the hus-band for his separate funds expended for its use. The circumstances and surroundings of each case have to be considered to determine whether the community could and would have been in the situation in which it was at the date of the husband's death in the absence of having had outside assist-ance called in for its benefit.

If such outside assistance would have been necessary it would be fair to pre-sume that it had been furnished by the husband himself if he had at the time the necessary means to have done so.

3. A written receipt given by a ward to his tutor for a certain amount paid to the former on his reaching majority would only show the fact of an indebt-edness to that extent and of the payment thereof, and serve as a voucher on an account when filed, and not acknowledge the existence of a further in-debtedness nor disclose, fix, nor recognize the ultimate balance due.

ON APPEAL from the Third Judicial District Court for the Parish of Lincoln. *Barksdale, J.*

*J. B. Holstead* for Plaintiff and Appellee (Mrs. Z. M. Kidd).

*S. D. Pierce* for E. S. Kidd, Defendant and Appellant.

*Frederick W. Price,* as Under Tutor for the Minor Heirs of James I. Kidd, Appellees.

Argued and submitted January 23, 1899.
Opinion handed down April 17, 1899.
Rehearing refused, reasons assigned, May 30, 1899.

The opinion of the court was delivered by

NICHOLLS, C. J. James I. Kidd, a resident of the parish of Lincoln, died in that parish on the twenty-ninth of January, 1896, leaving a surviving wife and four minor children, issue of his marriage with his said wife, in February or March, 1880.

He had been previously married, in 1870, to Martha R. Sims, who died on the twenty-fifth of August, 1871.

Of this marriage was one child, Ernest S. Kidd, who survived his mother.

The widow of James I. Kidd qualified as natural tutrix of their minor children, and proceeded to administer the succession of her husband in her capacity as tutrix.

J. I. Kidd seems to have been a member at different times of the partnerships of *Kidd & Lewis, M. B. Kidd & Bro., Jackson & Kidd* and *Kidd & Gullatt.*

An inventory of the property of the succession was made, amounting in value to the sum of thirty-one thousand two hundred and fifty-eight dollars and thirty-nine cents ($31,258.39).

Of this amount ($16,507.63) sixteen thousand five hundred and seven dollars and sixty-three cents was put down as the interest of the succession in the *partnership of Kidd & Gullatt* and two hundred and thirty dollars ($230) as its interest in the *partnership of M. B. Kidd & Bro.*

In June, 1897, the tutrix filed a provisional account of her administration, accompanying the account with a petition, in which she

asked for citation upon Ernest E. Kidd, for the homologation of her account, and for a partial partition of the succession.

In this petition she alleged that her husband during his marriage with her had received and used for the benefit of the second community two hundred and fifty dollars ($250) of her paraphernal property, which should be paid to her before any partition was made to replace said amount.

She did not place Ernest S. Kidd as a creditor upon the account, nor did she charge the second community as being indebted in any way to the separate estate of the husband.

Ernest S. Kidd answered, pleading first the general issue.

He admitted that the property inventoried and assets of the succession were acquired after the second marriage, but averred the same were acquired with the separate funds of J. I. Kidd, owned by him at the date of that marriage and brought into the community.

He consented to a partition of the property of the deceased between the widow in community and his heirs, but denied that this could be accomplished in kind; and insisted upon a partition by licitation.

He averred that the community was largely indebted to the succession of the deceased for separate funds brought by him into and used for the benefit of the same, in the production and acquisition of other property.

That his father owned at that time a half interest in the mercantile business of Jackson & Kidd, which was worth twelve thousand dollars; that he also owned a residence lot in Vienna, La., worth two hundred dollars, a residence and lot in the same place worth six hundred dollars; horse and buggy, cattle and hogs, worth three hundred dollars; cash in hand outside of the firm of Jackson & Kidd, five hundred dollars, and other accounts and credits.

That all of this property was brought into and used for the benefit of the community and the amount thereof should be replaced to his heirs before the widow in community should receive anything from the latter.

He averred that in the year 1870 his father was married to respondent's mother, Martha R. Sims; that he was the sole issue of that marriage.

That just after that marriage and during the lifetime of his said wife, J. I. Kidd received from his father-in-law, Isaac J. Sims, six hundred and eighty acres of land in Jackson Parish, worth three

thousand dollars, sixteen hundred and fifty dollars in cash, and various movables, the whole amounting in the aggregate to four thousand eight hundred and seventy-four dollars, which said money and property were the paraphernal property and funds of his wife and for which he became indebted to her, he having used the same for his individual behalf.

He averred that his mother, Martha R. Sims, died in March, 1871, a creditor of her husband for said amount, leaving respondent as her sole representative; that he became by inheritance from her, a creditor of his father, with legal interest from the date of his mother's death.

He averred that subsequent to his mother's death and in the year 1873 his father received for him from the succession of Isaac J. Sims, respondent's grandfather, the sum of fifteen hundred dollars in cash, and on the twenty-fourth of August, 1881, the further sum for respondent of six hundred and seventy dollars, from the succession of John D. Sims, which sum was due respondent as heir of his mother, who was herself the heir of said John D. Sims, who was her brother.

That his father became indebted to him and his succession was still indebted to him in these last two amounts with legal interest from the date of their receipt.

That the indebtedness due to him was subject to a credit of four thousand dollars on the twenty-ninth of January, 1896, amount paid him that day by his father by check on Gillis, Leverich & Co., of New Orleans.

That his father took charge of the said property and money and appropriated same to his own use, converting the property into money and using the same in his mercantile business and other speculative pursuits carried on in his individual name and for his own individual use and benefit.

That his father at no time paid or returned to respondent any portion of said property or money except the said amount of Four Thousand Dollars, through the check stated.

That Gillis & Leverich were in failing circumstances at the time and were unable to pay the check when presented, and respondent was forced to take in settlement of same from them property from which he was not able to realize more than one-half the amount.

That the check was given to him by his father a few days before

..and in view of death and it was a full recognition by him of his obli-
gations to him.

That previous to the marriage between the parents of respondent
his father had little or no property or money, and was not in a pecun-
iary condition to make or accumulate money, but after his said mar-
riage and the receipt of said paraphernal funds and property of
respondent's mother and the funds received from the successions of
respondent's grandfather and uncle, his father was able to and did
engage in lucrative mercantile and speculative ventures, and with the
funds made the fortune of which he died possessed. That all of said
funds—the original capital and all of its earnings and profits except
the four thousand dollars before mentioned—are included in the
assets of the succession of his father.

That the aforesaid sums less the four thousand dollars paid as
stated are still due to him by his father, and also legal interest thereon
from the dates on which they were severally received and went into his
hands, and that the same should be paid him out of the succession of
his father.

In view of the premises, respondent prayed that plaintiff's demand
to be decreed to be the owner of one-half of the assets of the succes-
sion of J. I. Kidd, and to have the same partitioned to her unincum-
bered with any debts due by the community to the succession of J. I.
Kidd and by said succession to respondent, be rejected; that previous
to making the partition prayed for by her, the succession of his father
be decreed to be legally entitled to be paid out of the said community
the amounts before shown to be due by it to the said succession, with
legal interest from February 28, 1880; that after deducting this
amount from the assets of the community and adding the same to
the succession of J. I. Kidd, that the remainder be divided equally
between the plaintiff and the said succession.

Respondent further prayed that he individually have further judg-
ment against the succession for the further sum of seven thousand
and fifty-four dollars, with legal interest on four thousand eight hun-
dred and seventy-four dollars, from March, 1871—five per cent inter-
est on fifteen hundred dollars from ——————, and five
per cent. interest on six hundred and seventy 49-100 dollars from
August 21st, 1881, until paid, as before stated.

That the sum of $7,044.49, with interest as stated, be taken
from the succession of J. I. Kidd and paid to respondent previous to

any partition of said succession, among the heirs of Kidd, and that. the remainder of the assets of said succession be partitioned among his heirs share and share alike.

That the property to be partitioned be sold for cash and a partition be made of the proceeds.

The minors, Allie, Eva, Milton and J. Ibry Kidd, children of J. I. Kidd, by his second marriage, and half brothers to Ernest S. Kidd, appeared through their under tutor and adopted the allegations of his answer, and the prayer thereof, in so far as therein and thereby judgment was sought to be obtained in favor of the succession of J. I. Kidd and his heirs against the second community, but denying all the allegations thereof in so far as E. S. Kidd sought to obtain a judgment for himself against the succession of his father, and praying that that portion of his prayer be rejected.

The widow in community and tutrix pleaded the prescription of four and ten years against the demands of E. S. Kidd, and the under tutor of the minors filed also on their behalf a plea of prescription of four years against the same.

Plaintiff moved the court to force E. S. Kidd to elect and declare whether or not he sued his father's succession by reason of his father having been his tutor.

This motion was overruled.

She also moved to strike out and dismiss the demands of E. S. Kidd on the grounds that the allegations did not disclose any cause of action against the community for matters prior to the date thereof.

· That he had accepted unconditionally the succession of his father, and had participated in several partial extra judicial partitions, the division of which was on the basis of one-half to the widow and the other half share and share alike. to each of the five children; that he had thereby acquiesced in the rights claimed by the plaintiff and was estopped from setting up claims against his father's succession and against the community.

That he had confounded his rights, if any he had, with his father's succession, and could not sue himself nor claim a debt against the community of his father's succession.

That if he had any such rights he should have provoked an administration and settlement of the community before acceptance of his succession and before participating in the partial extra judicial partitions.

That the demands of E. S. Kidd could not be legally engrafted upon. the proceedings before the court, but only adjudicated in a direct action against the legal representatives of his father's succession,. plaintiff being only before the court as tutrix for a partition of the remaining effects of the community in her hands.

The exception of no cause of action was overruled and the motion to strike out was referred to the merits.

Plaintiff moved the court to fix the fee of her attorney and order the same paid out of the funds of the succession before partition.

The District Court rendered judgment homologating the provisional account filed by the tutrix, with the following amendments:

"That the minors, Alice, Eva, Milton and Ibry Kidd, represented by their under tutor, and the major Ernest S. Kidd are entitled to the sum of seven thousand dollars to be paid to them in equal portions, and that Mrs. Zou M. Kidd be paid the sum of two hundred and fifty dollars, said sum to be paid before partition."

It further ordered, adjudged and decreed that the plea of prescription of four years interposed by the tutrix and under tutor be sustained and the demand of E. S. Kidd for the balance due him by his father be rejected; the costs to be paid by the succession, non-suit as to partition.

An order of appeal suspensive or devolutive was granted to the tutrix and a like appeal was granted to E. S. Kidd.

The latter perfected his appeal; the tutrix did not.

Mrs. Zou M. Kidd individually and as tutrix, answered the appeal praying that the judgment be amended by rejecting the demands of appellant *in toto* and by fixing and allowing counsel fee of accountant out of the succession as a whole.

## OPINION.

The first point to which we direct our attention is the denial by Mrs. Zou M. Kidd, widow in community of James I. Kidd, and tutrix of their minor children, of the right of Ernest S. Kidd, a child of her husband by a first marriage, to raise the issues he had raised in this. proceeding.

She contends that "an heir of the first wife has no right to inject demands against his father into a partition proceeding of the community of the last marriage between the widow and minor heirs.

(children of the second marriage) on the one side, and the major heir, the child of a first marriage, on the other.

That the heir of the mother stands as a third party to the proceeding. That the father's heir cannot set up in the partition what his father owed him as tutor. That the present proceeding instituted by her, looked simply to a partition of the remainder of the property of the succession, and that issue should not extend beyond that question.

After the death of J. I. Kidd, his widow qualified as natural tutrix of their minor children. In June, 1897, she filed an account designated as a provisional but evidently intended as a final one so far as the succession was concerned, and in the same proceeding she asked for a partition claiming half of the entire succession as partner in community, and asking that the other half be equally divided between Ernest S. Kidd, child of the first marriage, and the four children of the second marriage, all minors, making no mention of any indebtedness by the succession to Ernest Kidd, nor of any community debt to the succession of the husband.

E. S. Kidd was made a party defendant and filed in opposition to the account, an answer setting up the demands on which this contest is based. He joined in the prayer for a partition, insisting, however, that it should be made by licitation. The under tutor of the minors of the second marriage also consented to the partition. All of the property now remaining belonged to the second community. The husband having died first, the settlement of his succession carried with it as an incident, the settlement of the community.

The widow in this case was as tutrix administering the succession of her husband.

Parties holding claims against the succession if denied, were authorized to bring suit against her as representing the entire succession to have the same recognized.

Ernest S. Kidd claimed to be a creditor of his father's succession partly for property and funds for his mother, received by him during his lifetime and converted by him to his own use and partly for monies belonging to him received by his father after his mother's death, while he was a minor.

He was interested in his father's succession and also in the second community both as a creditor and as an heir.

Before he had instituted any proceedings (the tutrix filed an ac-

count called provisional), he was called into court by the widow to show cause why the account filed should not be approved, and as defendant in a partition proceeding which carried with it between the heirs and widow an adjustment of the rights of the parties.

The community and its affairs were not alone before the court for settlement, but also those of the succession of the husband, whose separate rights and obligations were so interconnected with and so interdependent upon those of the community as not to be easily separated. Zeigler vs. Creditors, 49 Anl., 176.

Having filed an account of her administration and called the appellee into court for the purposes of a partition, we do not think the widow in community and tutrix was authorized to restrict it to a simple division of community property, leaving undisposed of all questions of claims between the separate estate of the husband against the wife or against the community, or of the wife against the community or her husband's succession, or of the community against the wife or the husband's succession.

We think that the heirs of the husband were justified in this particular case in claiming to have a simultaneous and complete settlement of all claims and counter claims between the parties. It is true that the widow is not in privity with the heirs of the husband in the settlement or partition as an independent matter of the succession of her husband or after the community has been liquidated, and that it would not be permissible to blend community with separate property in sales to effect partitions (Mayor vs. Arment, 14 Ann., 181), and that proceedings like the present appear to involve a partition within a partition, or rather a double partition in the same action, but the succession matters proper can be easily kept separate and distinct from those of the community.

The widow in community might be an unnecessary party in respect to questions exclusively affecting the separate estate of the husband, but we do not think her simple presence in the suit without participation would work injury. There might be cases presented under such conditions as might make it important and proper to consider separately the affairs of the succession and those of the community, but that we think, could be left to be determined as a matter of practice, as they would arise and special facts shown. (13 Ann., 464, Succ. of Tucker).

We do not think that under the circumstances of this case, the form-

in which the issues were presented was calculated to work injury to any one and it had a tendency to avoid successive litigation which could well be closed at once. Ernest S. Kidd as creditor of his father's succession, could have gone into the partition proceedings by intervention. Being both creditor and heir, we see no objection as matters took shape, to his proceeding in the way he did. The objections urged are leveled at that portion of his demand wherein he sought to be recognized as heir of his mother and as a creditor of his father's succession. The conclusions we have reached on that branch of the case make this question an unimportant one. It is contended that James I. Kidd, having been appointed tutor of his son, Ernest, after his mother's death the son was restricted in his remedy to an action *for an account of tutorship,* that he was not authorized to bring as he was doing a direct action or claim against the succession of his father as being his debtor for the amount of monies belonging to him, which had gone into his hands with interest.

That position is not correct so far as the indebtedness of the father to the son arose from the latter's inheriting from his mother's succession a debt due to her by her husband for paraphernal funds of hers received by him and converted to his own use during his marriage.

A debt of the husband to the wife so transmitted to the son as the heir of his mother, retains its separate, independent character and is not merged by reason of the father's qualifying as the minor's tutor after the mother's death, into the tutorship liability for funds and property belonging to his ward, received by him during the tutorship.

It is not held by a fiction to have been paid by himself as husband over to himself as tutor, and held as such. When the minor reaches the age of majority he is not required to obtain the recognition and the enforcement of such a claim through an action of account; nor is a claim of that character covered by the four years' prescription of Art. 362 of the Civil Code. He has the right to proceed upon it by direct action. This has been repeatedly held. Ziegler vs. Creditors, 49 Ann., 145; Pertruit vs. Damare, 50 Ann., 893; 1 N. S., 334; 1 La., 347; 31 Ann., 535; Cambre vs. Grabert, 50 Ann., 808; 28 Ann., 830; Bridges vs. Simonton, 6 La., 163; Commagre vs. Gally.

The claims for amounts received by the tutor for the minor during the tutorship stand on a different footing. That claim has to be advanced and urged through an action for an account, and if that account is buried by the four years' prescription the claim itself is lost.

It is the necessity of having recourse to the particular method of proceeding by action of account and the loss of the same by non-action which controls the situation. Ludwig vs. Weber, 35 Anl., 581; Commagere vs. Gally, 6 La., 163; Cochran vs. Violet, 37 Anl., 224-225; Bedell vs. Calder, 37 Anl., 809; Gallion vs. Keegan, 39 Anl., 468. The fact that a tutor should pay his ward arrived at majority a certain amount of money avowedly to be credited to the tutor in his final account with him but without at the time a final adjustment and settlement of the tutorship, would not keep the right of action for an account open for four years from that date. A written receipt for the amount paid if produced would only show the fact itself of an indebtedness to that extent and of the payment thereof and serve as a voucher on an account when filed for the amount paid, but it would not fix or disclose nor recognize the ultimate balance due.

The evidence satisfies us that J. I. Kidd was appointed and qualified as tutor of the minor Ernest, after the death of his mother, and that he received in that capacity for appellant the various amounts which were received by him after his wife's death. The prescription of four years bars recovery for those claims. That prescription, as we have said, would not have barred recovery of monies of paraphernal funds of the wife received by the husband during the marriage, had the existence of claims to the extent asserted been satisfactorily shown, but that fact has not been so shown.

Appellant has been made an unfortunate sufferer by the destruction of the records of the parish of Jackson, and the consequent destruction of the evidence necessary to establish a portion of his demand. But for the check given him by his father for four thousand dollars, we would not have been able to have sustained claim against his father for even that amount. The evidence going to establish his father's indebtedness to him for three thousand dollars, for proceeds of the sale of land donated to his mother by her father and converted by him to his own use, is of a very weak character, too weak to support a judgment for the same.

The most difficult issue in the case is the ascertainment of the situation of the second community with respect to any indebtedness due by it to the succession of the husband.

The evidence shows that at the date of his second marriage, in February, 1880, Kidd was an equal partner in the commercial firm of Jackson and Kidd, whose assets at that time consisted of a storehouse

and stock of goods which were worth about twenty thousand dollars. That he owned two lots of ground at Vienna, worth about eight hundred dollars, and a few movables of no very great value. Kidd's partner, Jackson, says he was at that time worth five thousand dollars, outside of his partnership interests, but the statement made is not sufficiently verified or corroborated by details to carry much weight as evidence, though it is probably well grounded.

He is not shown to have had any real estate upon which the monies he then had were likely to have been expended in the way of permanent improvements thereon.

Mrs. Kidd had at the time no property nor none afterwards other than two hundred and fifty dollars, which her husband received. The inventory of the succession of Kidd showed assets to the amount of ————————, all belonging to the community.

The partnership of Jackson and Kidd was dissolved in 1882, and in the interval between Kidd's second marriage and June or July, 1881. did a large and prosperous business.

At that date their storehouse, worth about a thousand dollars and almost their entire stock of goods were consumed by fire. The property was only partially covered by insurance and the amount of loss over and above the same was about five thousand dollars.

From that time on the business was carried on with a view to closing, and in fact the partnership ended the next summer. On a partition made at that time between the partners, each received about six thousand dollars. Kidd afterwards formed a commercial partnership with Gullatt, under the name of Kidd and Gullatt, which continued up to the former's death.

He seems to have been a prudent, conservative business man, engaged almost exclusively in mercantile business.

The evidence does not show him to have met with any business losses or reverses. Under these circumstances it is claimed by the widow that the entire property left at her husband's death belongs to the community, and that her husband's succession is entitled to nothing. That there has been a failure on the part of his heirs to show by direct evidence that any portion of his separate estate was used for the benefit of the community.

That it is not sufficient to show that at the date of the marriage or at any particular time during the marriage, her husband had in his possession and under his control a certain amount of money

belonging to himself individually, to justify his heirs in obtaining a judgment in their favor against the community for that particular amount, if the whereabouts of the money could not be ascertained.

In dealing with this question as to the liability of the community to the separate estate of the husband for separate funds claimed by his heirs to have been expended by him for the community, each case has to be disposed of under its own particular state of facts, as shown by the record. No fixed rule or standard as to extent of the evidence necessary to sustain such a claim can be formulated. We have to take into consideration all the surroundings and circumstances connected with each case to ascertain whether it can be reasonably said that the situation of the community at the time of the husband's death could or would have been found as it was, in the absence of having called into its assistance and for its benefit outside funds and property.

If this could not be reasonably said, we do not think we would be likely to fall into error in presuming (if the husband himself had at that time separate funds which could be applied for that purpose), that he himself had in fact furnished this assistance; the only trouble would be to ascertain with sufficient definiteness what the amount applied was.

In the case at bar if the husband did not furnish his means for the benefit of the community and if they do not stand represented by a claim against the community, it is difficult to know what became of them and still more difficult to know by what process and through what instrumentalities the community acquired the property belong· ing to it described in the inventory. The partnership of Jackson and Kidd existing as an entity prior to Kidd's marriage, separate and distinct from the parties who composed it, kept up and retained that same character separate and distinct from the community up to the time of its dissolution, though one-half the profits enuring therefrom fell into the community.

During its existence each partner must have drawn from time to time from its profits and applied the same, it may be reasonably supposed, for their family wants. If Kidd's family was not supplied from that we cannot imagine from what other quarter it was. The effect of our recognizing the right of the heirs of the husband to withdraw prior to the partition of the community the amount of his separate funds, reasonably ascertained to have been utilized for its

74

benefit, will not be to leave it in a condition of insolvency, but with surplus of profits over expenditures simply reduced.

The community which started with nothing at all and with the large demands upon it for the support of the family and with nothing but the husband's capital and his personal services applied to that capital to work on, would still come out on dissolution with a large amount belonging to it.

It would be inequitable under the situation shown by this record to permit the whole capital of the husband to be sunk and lost by leaving the succession of the really active worker in the same to suffer.

It is, we think, a proper case for permitting the spouses to withdraw from the property left at Kidd's death the amount of the separate estate of each, and to partition the balance representing profits exclusively between the widow in community and the heirs of the husband.

We think we can safely fix ten thousand dollars as an amount of separate funds of James I. Kidd expended during his lifetime for the benefit of the community. Menhert vs. Dietrich, 36 Ann., 390; Succ. of Webre, 49th Ann., 1491; Succ. of Billington, 50 Ann., 969; Succ. of Blanchaud, 48 Ann., 578; Heirs of Gee vs. Thompson, 41 Ann., 354; Denegre vs. Denegre, 30 Ann., 278; Succ. of Rhodes, 39 Ann., 474; Succ. of Boyer, 39 Ann., 509.

The District Court non-suited the application for a partition. Although there was a difference of opinion as to the method of making it, all parties agreed and prayed that one should be made.

The right to a partition is an absolute one. The court should have ordered the partition and fixed its mode. We think justice would be best subserved by reversing the judgment on that particular subject and remanding it to be disposed of finally by the lower court.

For the reasons assigned it is hereby ordered, adjudged and decreed that the judgment appealed from be amended by increasing the amount due by the community between James I. Kidd and his second wife, appellee herein, up to the sum of ten thousand dollars, and that it be annulled and avoided and reversed in so far as it non-suits the parties upon their demands for a partition, that the judgment appealed from except in so far as herein amended and partially reversed, be affirmed and that the cause be remanded to the District

Court for further proceedings according to law in respect to the mat-ters left open by this judgment.

### On Application for Rehearing, or Amendment of Judgment.

Nicholls, C. J. Ernest S. Kidd, one of the appellants herein, asks the court to so amend its judgment, as to leave open the question of the paraphernal debt alleged to be due by J. I. Kidd to his first wife, sued for herein by said appellant, as her heir for paraphernal funds .of the said wife received by her husband during their marriage, and converted to his own use and benefit, and to order that issue to be tried over again in the District Court, and to allow appellant to introduce other and additional evidence to sustain this part of his demand.

In support of this application, he avers, that he has now in his possession a letter written by his father, in which he acknowledges the amount of paraphernal funds received from his wife.

That this evidence was not available at the first trial, having been discovered since. That in addition to this, he has made the discovery that the act of sale (notarial in form) from J. I. Kidd and his wife to W. F. Sims, prior to the destruction of the records in Jackson Parish, was recorded in Lincoln Parish.

In our original opinion in the case, we stated that this appellant had been an unfortunate sufferer from the destruction of the records in Jackson Parish, which had caused him to place his claims before us upon insufficient evidence. We think it in the interest of justice that he should be given an opportunity to furnish some evidence here-after, if he can. It is claimed that he will be able to do so. This matter comes to us rather irregularly, but we think it our duty to act upon it. Davis vs. Dancy, 1 N. S., 589.

For the reasons assigned, it is hereby ordered, adjudged and de-creed, that the judgment hereinbefore rendered by us in this case be amended so as to annul and reverse that portion of the judgment of the District Court appealed from which rendered judgment against Ernest S. Kidd, upon the demand and claim set up by him against his father, James I. Kidd's, succession for monies received by his said father during his marriage with the mother of said Ernest S. Kidd belonging to her separately as her paraphernal funds, and converted by her husband to his own use, and it is now ordered, adjudged and decreed that the matter of said claims be left open for examination

by evidence and for decision, and be tried and disposed of by the District Court under our decree heretofore rendered, remanding this cause to said court for further proceedings according to law.

There being no necessity for a rehearing in order to make this alteration in our former judgment, the rehearing applied for is refused.

MONROE, J. takes no part, the case having been submitted prior to his accession to this bench.