(43 South. 667.)

No. 16,330.

Succession of BARROW.

BARROW et al. v. BARROW.

(April 1, 1907. Rehearing Denied April 29, 1907.)

1. HUSBAND AND WIFE — SEPARATE PROPERTIES—MINGLING OF AFFAIRS.

When a person mixes or mingles his own affairs with those of another person, and subsequently seeks to hold that other responsible for matters and things resulting from such mingling, he must affirmatively establish that the claim made by him rests in reality upon the affairs of that other.

2. SAME — RIGHTS OF SURVIVOR — MERGER OF CLAIM.

If a husband, pending his marriage, expends separate funds of his own upon the separate property of his wife, but is by her will left all the property belonging to her, his claim for the enhanced value of the property through the expenditures is merged and confounded in the acquisition made by him under the will of the property so enhanced. If the forced heir of the wife has the legacy reduced to the wife's disposable portion, the claim for enhancement is merged and confounded to the extent of the interest continued to be held by the husband.

3. SAME.

If during a marriage matters take such a shape as to cause a claim to accrue in favor of the husband against the wife, it is the duty of the husband, who receives during the marriage moneys accruing to her from inheritances falling to her, to apply the same to the extinguish-

ment of the claim, and not hold the matter open to be advanced as a claim against the wife's succession. Debts of the wife paid during the marriage are presumed to have been paid by her, if during the marriage she receives moneys from inheritances falling to her. If those moneys have passed into the possession and under the control of her husband, those debts are presumed to be paid by him for her out of those funds, rather than out of funds of his own.

(Syllabus by the Court.)

Appeal from Twenty-Fourth Judicial District Court, Parish of West Feliciana; George Kent Favrot, Special Judge.

In the matter of the succession of Anna M. Barrow. Action by Carrie R. Barrow and husband against Charles M. Barrow. Judgment for plaintiff, and defendant appeals. Reversed in part, and affirmed in part.

Samuel M. C. Lawrason and Robert C. Wickliffe, for appellant. William Richards Percy and Charles Kilbourne, for appellees.

Statement of the Case.

NICHOLLS, J. Plaintiff averred that her mother, Mrs. Anna McNary Barrow, died on the 30th day of April, 1904; that petitioner is the only child and forced heir of Mrs. Anna M. Barrow, being the issue of her marriage with her first husband, James Reeve, deceased; that her mother left a will wherein her surviving husband, Charles M. Barrow, was named as legatee of all her property with the exception of $5, which sum was the only legacy bequeathed to petitioner; that the will was probated before A. Villeret, clerk of the court and recorder, on the 9th day of May, 1904; that by the provisions of said will Charles M. Barrow was appointed executor without bond, etc.; that he failed and neglected to have a true and faithful inventory and appraisement made of all the property, rights, and credits appertaining to the succession of Mrs. Anna M. Barrow, as the law requires; that the partial inventory filed in court does not contain an exact and particular description of all the effects, movable and immova-

ble, of the succession; that Charles M. Barrow, acting as executor of said succession, failed and neglected to have pointed out and placed upon the inventory certain property appertaining to the succession which she described; that all said described property omitted from said inventory, as well as the property placed thereupon, belonged then and now belongs to the succession of Mrs. Anna M. Barrow; that as the only surviving child and forced heir of her mother, as hereinabove set forth, petitioner is entitled to have the disposition made in said will in favor of said Charles M. Barrow, reduced to one-third of the property of said succession, to have herself declared the owner of the remaining two-thirds thereof; that she is entitled to recover of Charles M. Barrow two-thirds of the rents and revenues derived from the property of the succession for the year 1904; that petitioner is without information as to the details of the administration by said executor of said property during said year, and, as heir, petitioner is entitled to an account of his administration, as aforesaid; that by marriage contract the deceased, Mrs. Anna M. Barrow, and her husband, Charles M. Barrow, were separate in property; that said Charles M. Barrow is a debtor to the succession, as follows, to wit, in the sum of $5,000 received by said Charles M. Barrow from the said Mrs. Anna M. Barrow, being money received by the deceased from the succession of her uncle, Walter S. MacNairy; that a statement of said indebtedness should appear upon the inventory of said succession of Mrs. Anna M. Barrow; that said Charles M. Barrow has been unfaithful in his administration of said succession, in that he did, in March, 1905, induce a number of tenants on the plantation of said succession to leave the place and move upon or work property of his, also by demolishing a cabin on the land of the succession, and removing the lumber from same to land of his own; that the value of

petitioner's two-thirds interest in the property of the said succession is at least $15,000.

In view of the premises, petitioner prays that Charles M. Barrow, individually and as executor, be cited, and after due and legal proceedings she have judgment recognizing her as sole forced heir of her mother, Mrs. Anna M. Barrow, deceased, and decreeing her to be the owner of two-thirds of the property of the succession of Mrs. Anna M. Barrow, deceased, and she be put in possession thereof; that the property hereinbefore described as having been omitted from the inventory of the said succession be decreed the property of said succession, and, as such, subject to the claim of petitioner as heir; that she have judgment for two-thirds of the rents and revenues of the property of said succession; that said Charles M. Barrow, executor, be ordered to file an account of his administration of said succession; that said Charles M. Barrow be dismissed from the executorship of said succession; and for costs and general relief in the premises.

On reading this petition, the court ordered that defendant be cited to comply with the demand, or answer the same.

The defendant answered individually and as executor. He first pleaded the general issue. Further answering, he said that he denied specially that he had failed to make a true and faithful inventory of the property depending on the succession of his said wife. He averred that plaintiffs actively participated and assisted in taking the inventory of said succession, and permitted same to be filed without protest or suggestion of omissions; that the articles mentioned in plaintiffs' petition as property of the succession not placed on the inventory were divided by Mrs. Carrie Barrow, one of the plaintiffs, with defendant, and were left off the inventory by consent; that there were also left off the inventory certain other articles not mentioned in the petition, which said plaintiff expressed a desire to have (which he de-

scribed)—all of which were worth at least $400, and which defendant consented she should have, and did not inventory—that, as a creditor and legatee, defendant felt that he could safely consent to these omissions from the inventory without impairing other rights than his own; that defendant knows nothing of any money or other property, except as above mentioned, belonging to the succession not inventoried, except a few articles in possession of plaintiffs which are hereinafter claimed in its behalf; that there were included in the inventory certain articles (which he described) which were the separate property of defendant; that the cabin removed from Belmont plantation was built with defendant's own funds during his term as executor, and was removed because plaintiffs refused to recognize it as a debt of the succession; that he did not induce any tenants on the property of the succession to remove therefrom; that some of said tenants left said property because they could not get advances, and plaintiffs insisted that, should defendant make them any advances, which he was willing to do to keep them on the place, he should guaranty the rent, which he declined. Defendant specially declined owing his wife the sum of $5,000 received from the succession of her deceased uncle, Walter S. MacNairy, or any other sum. He avers that during his married life he always had means of his own, and contributed liberally to the expense of the marriage, and of the household, which consisted of himself and wife, for some years of a daughter since deceased, of one of the plaintiffs, Mrs. Carrie Barrow, of his wife's mother, and often of other relatives of his wife, and he received nothing from his wife for his own personal expenses, or for any other purpose; that he gave time and attention to the management of his wife's said property with which she intrusted him, and which was alone sufficient contribution on his part to the marriage expenses, but that

he also contributed largely thereto from his own means; that outside of his contributions to the marriage expenses, as aforesaid, he expended his separate funds to improve his wife's said separate property, the Belmont plantation, and paid taxes thereon, the sum of $6,579.89, as will appear by itemized account of said improvements and expenditures, which is a debt due him by her succession, and should be repaid him in due course, and before any distribution of her estate.

Defendant further represents that on the 29th day of October, 1887, in order to pay a judgment recovered against her by one of the plaintiffs, Mrs. Carrie Barrow, for the sum of $3,500, his said wife sold for an alleged consideration of $3,500, and with the right of redemption, to J. Freyhan & Co., merchants of this parish, and in due course said property appears to have been transferred to her on the ———— day of ————, ————; that in said transactions J. Freyhan & Co. paid no money to his said wife when the title to said property was transferred to them, and his wife gave them nothing on its reconveyance, but that in truth and fact said sum of $3,500 was paid by defendant out of his own separate funds for his said wife, to enable her to settle said judgment and preserve her property, which will more fully appear by a counter letter executed at the time of said reconveyance, or at any other time, and same is a debt of the succession of his said wife, always recognized and admitted by her, which served to preserve said Belmont plantation to her, and which should be paid defendant in due course, and before any distribution of her estate; that at the death of his wife there was a growing crop on her said property of which defendant continued the management after qualifying as executor, with the full knowledge and consent of plaintiffs, one of whom was employed to assist in said management.

Defendant declared that he filed with his

answer his final account, showing the assets and liabilities of the succession, and, as a supplement thereto and as part thereof, an itemized account of the planting operations referred to which he desired should be approved and homologated. He further averred that plaintiff should be charged with certain articles (which he described), which they used during 1904, and are in their possession, and for which they have neglected to account; that they should be decreed to return the same, together with the enumerated articles received by Mrs. Carrie Barrow, or their value.

He averred that he had charged executor's fees on the account because the liabilities of the succession exceeded the assets, and not that he waived any rights as a legatee, whatever they might be. Defendant filed an amended and supplemental answer, in which he averred, for the purpose of making clearer his claim for the return of the sums expended by him out of his separate estate in improving his wife's property, that said expenditures resulted in enhancing the value of his wife's said property in an amount greater than the sums alleged in his original answer, and in the account filed to have been so expended, and for which he is permitted to recover. Wherefore, in adopting the allegations and prayer of his original answer, he again prays that plaintiffs' claim be rejected, that he recover the amounts claimed in said answer, and in his account, and for general relief.

The plaintiff, as the only child and forced heir of Mrs. Anna M. Barrow, reaffirming the allegations in her petition, opposed the account filed, on the ground that the items on said accounts are not due, and should be stricken therefrom, or, if due, that they are excessive, and should be reduced, and opponents call for strict proof of the validity of said items.

They specially oppose the item of C. M. Barrow, executor, for $150, as said C. M. Barrow, being legatee, cannot claim a commission as executor. The opponents further specially oppose the account, in that it omits items of credit from negro accounts for cotton received from tenants and half hands, and that it omits from said account 35 or more tons of hay, and also certain articles of household goods, such as linens, etc., and other items of property more specifically set forth in plaintiff's petition herein, such as horses and cattle and other live stock.

Opposers specially plead that Chas. M. Barrow is estopped from setting up indebtedness to him, as set forth in Exhibit A, annexed to said account, purporting to show an itemized statement of improvements, etc., or for the enhancement of the value of said property by said Barrow by his statements contained in act of sale from him to said Mrs. A. M. Barrow, of date April 19, 1901, and of record in notarial record Book W, p. 645, of the parish of West Feliciana, which said statements are to the effect that said Charles M. Barrow was indebted to Mrs. A. M. Barrow in the sum of $1,600, which said indebtedness was subsequent to the dates of the alleged indebtedness to him.

In view of the premises, opponents pray that this opposition be filed, and that the said account be amended, as above set forth in credits and debits, and by striking therefrom all the items which are not fully proved to be due, and that all other items be reduced to proper and reasonable amounts, and for general relief.

The case was tried before a special judge, who rendered judgment reducing the legacy of the deceased, Mrs. A. M. Barrow, to Charles M. Barrow, to one-third of the property of Mrs. Barrow, and recognizing and decreeing that Charles M. Barrow as owner of said one-third. It adjudged and decreed that Mrs. Carrie Barrow be recognized as the owner of the remaining two-thirds of said

property, and that, after the payment of all debts and charges, they be placed in possession of their respective shares. It further ordered, adjudged, and decreed that the said C. M. Barrow be recognized as the owner of the two horses, two mares, six mules, thirty cattle, one wagon, and one carriage mentioned in plaintiffs' petition, and that the plaintiff Mrs. Carrie Barrow be recognized as the owner of the twenty-six sheep mentioned in her said petition. It further ordered, adjudged, and decreed that the final account of the executor be amended, as follows: That the charge of C. M. Barrow of $3,500, for money loaned to deceased, be disallowed and rejected; that the charge of $6,679.89 of C. M. Barrow, for enhanced value of separate property of deceased resulting from improvements placed thereon by him, be reduced to $1,000, and said charge of $1,000 be recognized and allowed. It further ordered that the charge of J. Freyhan & Co. for $400, balance due on plantation account, be disallowed, and a charge of $200 be recognized and allowed; that the charge of J. Freyhan & Co. of $392, plantation account for April, 1904, and the charge of $24, interest on old account, be reduced to $196 and $12, respectively, and said charge of $196 and $12 be recognized and allowed. It further ordered that the charge of $2,143.85, principal and interest of three notes paid Bank of West Feliciana, be reduced to $1,071.93, and said charge of $1,071.93 be allowed. It further ordered that the account be amended so as to credit the succession with $77.50, and that the charge of $86, "cash sale of cotton seed," be disallowed and rejected, and the succession be credited with said $86 and charged with $72.90. It further ordered that the charge of $8, "suit of clothes for boy," and $3.75, bill of Weydert, be disallowed and rejected. It further ordered that the charge of commission of executor be disallowed and rejected. It ordered that a charge in favor of C. M. Barrow of $168 be allowed, with interest thereon at the rate of 5 per cent. per annum from April 30, 1904. It further ordered, adjudged, and decreed that there be judgment in favor of the heirs of Mrs. A. M. Barrow and against C. M. Barrow in the sum of $500, with interest thereon at the rate of 5 per cent. per annum, from April 30, 1904, until paid. It ordered, adjudged, and decreed that in all other respects and as herein amended the final account of the executor be approved and homologated, and that after the payment of all debts, charges, and legacies he be discharged from his trust.

The plaintiff appeals, as does the defendant, individually and as testamentary executor of Mrs. A. M. Barrow.

Plaintiff is the stepdaughter of the defendant, Charles M. Barrow. Her mother, at the time of her marriage with the defendant, in 1869, was the widow of James W. Reeve. Prior to their marriage, the parties entered into a marriage contract, in which it was stipulated that:

"The future wife retains the absolute control and administration of all her property, and particularly of a plantation situated in the parish of West Feliciana, containing 1,022 acres, bounded [giving the boundaries], known as the Black Water plantation [now called Belmont], with all the buildings and improvements thereon and thereunto belonging. Said plantation and its revenues shall in no manner be subject to debts and obligations of any kind of the said future husband."

Mrs. Anna Barrow died on the 30th January, 1904, leaving an olographic will, dated March 5, 1887, whereby she bequeathed the sum of $5 to the plaintiff, her daughter by her first marriage, and left the balance of her property of every kind to her husband, Charles M. Barrow, and appointed him her executor without bond. The will was probated and ordered executed. The husband had an inventory taken on May 7, 1904, and qualified as executor.

Defendant acquiesces in the judgment in

so far as it reduces his legacy to one-third of the property, and that issue passes out of the case.

On the inventory the Belmont plantation, with the buildings and improvements thereon, was valued at $6,000; movable property to the value of $587.50 was inventoried—making a total of $6,587.50. · On October 30, 1887, the plaintiff, who had sued her mother and her mother's husband, as her tutrix and co-tutor, signed a receipt, by which she acknowledged that she had received of Mrs. C. M. Barrow, tutrix, and C. M. Barrow, co-tutor, $3,500 in full settlement and payment of all claims and judgments of Mrs. Carrie B. Reeve, Wife of R. H. Barrow, v. Mrs. A. M. Barrow, Tutrix, and C. M. Barrow, Co-Tutor; the said Mrs. Anna M. Barrow and husband to pay all costs of court. The claims and judgments for which the receipt was given do not appear in the record.

On the 29th of October, 1887, Mrs. Anna M. Barrow, wife of C. M. Barrow, by notarial act authorized and assisted by her husband, from whom she declared she was separated in property, for and in consideration of the sum of $3,500 cash in hand, paid by Julius Freyhan & Co. to her, the receipt whereof she acknowledged, sold with full warranty to Julius Freyhan & Co., who accepted title to the same, the property therein described, with all the buildings and improvements thereon. It was, however, expressly agreed, stipulated, and understood that Mrs. Anna M. Barrow, wife of Charles M. Barrow, or Charles M. Barrow, husband, or each or both of them, shall have the right and privilege of redeeming the property described upon Mrs. Anna M. Barrow, wife, or Charles M. Barrow, husband, or each or both of them conjointly, upon their each separately or conjointly paying the purchase price of said land and improvements on the following terms and conditions, to wit: One-third thereof payable one year after date,

one-third payable two years after date, and the remaining one-third three years after date, with 8 per cent. per annum interest on each of said installments from date until paid. This act was recorded on November 2, 1887. The property described in this act was the Blackwater or Belmont plantation. On the same day the following instrument was written and signed:

"This contract and agreement made between Mrs. Anna M. Barrow, wife of Charles M. Barrow, authorized by him and by Charles M. Barrow, and Messrs. Julius Freyhan & Co., witnesseth: That whereas, on this date to wit, the 29th of October, 1887, before Lane W. Brandon, clerk of the Fifteenth judicial district court, ex officio recorder, the said Mrs. Anna M. Barrow, wife as aforesaid and authorized as aforesaid, has sold the plantation known as the Blackwater plantation, or Belmont, consisting of [describing it] with all the buildings and improvements thereon, unto said Julius Freyhan & Co. for three thousand five hundred and fifty dollars, as will be seen by reference to said act, giving, according to its terms, the right to Mrs. Anna M. Barrow or Charles M. Barrow, or either, or both of them, the right to redeem upon repayment of the purchase price in one, two or three years from date, in equal installments with eight per cent. per annum interest thereon from date till paid. Now it is distinctly agreed and understood that the purchase price of said plantation above described was not in reality paid by Julius Freyhan & Co. by them to Mrs. Barrow to enable her to compromise and settle with her daughter the judgment in the Fifteenth district court in the matter of the minor Carrie B. Reeve against Mrs. Anna M. Barrow, tutrix and Charles M. Barrow, tutor, but was in fact, in truth, paid by Charles M. Barrow out of his individual funds and the said property is not that of Julius Freyhan & Co., they hereby acknowledging they have no interest therein whatever, and they hereby agree in due time and whenever called upon to formally transfer said property to the party or parties who may be justly entitled to the same. In testimony of which the parties sign hereto on this 29th October, 1887, in presence of Charles L. Fisher, who also signs hereto.

"[Signed]                    J. Freyhan & Co.
                             "A. M. Barrow.
                             "C. M. Barrow."

On the 18th of February, 1892, the following act was executed before Lane N. Brandan, clerk of the Fifteenth judicial district court, ex officio recorder:

"Before me, Lane N. Brandon, clerk, etc., * * * appears Messrs. J. Freyhan & Co. and

Mrs. Anna M. Barrow, aided by her husband, C. M. Barrow, but separate in property from him as evidenced by a marriage contract in notarial record R, on page 59, and the said Messrs. J. Freyhan & Co. declared unto me, clerk, that for and in consideration of the price and sum of three thousand five hundred and fifty dollars, with interest at eight per cent. from October 29, 1887, which they hereby acknowledge to have received and Mrs. A. M. Barrow having complied with all the terms of sale made between her and themselves and recorded in Record U, on page 219, they do by these presents grant, bargain, sell and deliver to the said Mrs. A. M. Barrow, the following described property, to wit [describing it], with all the buildings and improvements thereon, known as the Belmont plantation.

"[Signed]　　　　　Morris Wolf.
　　　　　　　　"Julius Freyhan.
　　　　　　　　"P. P. Morris Wolf.
　　　　　　　　"A. M. Barrow.
"Witnesses:
　"Chas. Cahn.
　"F. D. Haralson."

This act was recorded February 18, 1892.

On the 5th of January, 1893, by notarial act before L. W. Brandon, clerk and ex officio recorder, James Rudman sold and delivered to Charles M. Barrow, with full warranty, a certain plantation, with all the buildings and improvements thereon and certain head of cattle and horses described in the act, for the price of $4,500, of which amount $2,250 were paid cash, and the balance evidenced by a note of even date executed by C. M. Barrow in favor of the vendor for $2,250, with 8 per cent. per annum interest until paid, secured by special mortgage and vendor's privilege.

On the 19th of April, 1901, Charles M. Barrow sold the same property to his wife, Mrs. Anna M. Barrow, for the sum of $3,430.88, payable as follows: By the assumption of a mortgage note of C. M. Barrow in favor of James Redmond for $1,830, then held by Morris Wolf, and the cancellation of a note of C. M. Barrow in favor of A. M. Barrow for $1,600.

On the 8th of May, 1901, Mrs. A. M. Barrow retransferred the same property to her husband for the price of $1,600 cash, and her husband assuming the payment of his note held by Morris Wolf, described in the former act between the parties.

In the account filed by C. M. Barrow, he set up as a claim due him by the succession of his wife for $3,500, based upon the alleged payment by him of the judgment held by Mrs. Carrie Barrow (plaintiff), against her mother, Mrs. A. M. Barrow. He also claimed that the succession owed him the sum of $6,579.89 for improvements made by him upon the separate estate of Mrs. A. M. Barrow.

### Opinion.

In respect to the first of these claims, plaintiff urges that, in 1901, the defendant, in the act of sale to his wife, acknowledged that he was then indebted to her in a note, and, if so, a debt arising out of the transaction of 1887, if it ever existed, had become extinct, as he could not owe his wife $1,600 at the same time that she owed him $3,500, and, besides, plaintiff could not contradict the declarations contained in the notarial acts.

In his reasons for judgment, the trial judge said:

"Belmont was the separate property of the wife. The husband lived on the plantation. It was his home. The family expenses came, as a rule, out of the revenues of this plantation. The defendant attended to all the business of the plantation. He signed all the checks, and wrote all orders. He collected the revenues and paid the bills. The plantation was cultivated under his supervision and management. The revenues were deposited in bank in his name, and the account was subject to check by either. The debts incurred in such administration were community debts, and the revenues community revenues."

On the trial of the case, defendant successfully held plaintiff bound by her allegation that the parties were separated in property, and he caused to be excluded all evidence for the purpose of showing they were in community. The effect of this is to bring the case before us with the Belmont property recognized by both parties as separate property and the administration thereof fall-

ing legally to the wife under the marriage contract, also for the purposes of this case to bring the Redmond plantation before us as belonging to the husband. The statements made by the trial judge as to the part taken by the husband in the management and control of the Belmont plantation extended to all of the property of the wife. He not only had control over the crops on the Belmont plantation, but he himself determined in whose name the accounts with the merchants should stand. The wife, notwithstanding the declaration made in her marriage contract that she retained the administration of all her property, placed everything she had under the control of the husband. That fact affected the rights and obligations of the parties inter se, but did not bring them into community relations with each other.

The situation we have to deal with is that of a woman separated in property, who of her own volition has permitted her husband, without procuration, to take complete charge of her separate estate and receive all the fruits thereof. It resembles in some features that of Mrs. Voiers, in the case of Voiers v. Atkins, 113 La. 328, 36 South. 974, to which we refer. See, also, Civ. Code, art. 2386. We may say here that the husband, in this instance, was not insolvent, but perfectly able to meet his obligations with reference to supporting his family. We do not attach any great importance to the fact that the defendant caused the accounts with Freyhan & Co. and of their successors to be made in the name of his wife. The evidence shows that the purchases and expenditures made by him for his Redmond plantation were placed also on that account. If a person mixes or mingles his own affairs with those of another person, and subsequently seeks to hold that other responsible for matters and things resulting from such mingling, he must affirmatively establish that the claim made by him rests in reality upon the affairs of the person sought to be charged. Defendant makes no

such proof here with reference to the accounts of Freyhan & Co. and their successors. So far as the accounts standing on those books at the time of Mrs. Barrow's death as remaining unpaid, the succession cannot be held liable for any part thereof, and so far as the judgment appealed from holds otherwise, it is hereby annulled and reversed.

With regard to the movables claimed by defendant as belonging to himself, and which ownership he sustains by his oath, we must on that point affirm the judgment; there being no contradicting testimony.

The rejection by the trial judge of defendant's prayer for a judgment for $3,500, based upon the assertion that he had paid his wife that amount to satisfy the judgment which plaintiff had obtained against her, is correct. Conceding the fact to be that the placing of the title of the Belmont plantation in the name of Freyhan & Co. was a plan resorted to with the view of securing the husband against loss and enabling him to be reimbursed for the amount so paid, when desired, we think the evidence establishes that that result has been accomplished, and that the husband has been paid. It appears from the standpoint of the defendant that Freyhan & Co. were to hold the title to the property only so long as the other parties might desire them to do so, and that they engaged to permit the redemption of the property at the instance of either the husband or the wife. The property was, in fact, redeemed by the wife. Obviously, the parties, by some arrangement or agreement between themselves, had adjusted the accounts between themselves, and that Mrs. Barrow had, in some manner, made the payments called for by the act to Freyhan & Co. It is fair to assume that Freyhan & Co. would not have made the retransfer of the title to the property to the wife without the knowledge and consent of the husband. The acknowledgment subsequently by the husband that his wife

then held his note in her favor for $1,600 is corroborative of that fact.

We do not think that defendant is entitled to reimbursement for any enhancement in value that the Belmont plantation may have received from the improvements placed upon it by the husband. Whatever enhancement may have resulted from that fact, the husband has obtained the benefit of it by having had given to him by will of the wife the property itself, which had been so enhanced, and through the instrumentality of the amounts of the various legacies which fell to the wife during the marriage, that were received by the husband or placed in his possession or under his control and subject to his check by the wife prior to her death.

In the consideration of the question of the indebtedness between the spouses, we must not overlook the fact that, while Mrs. Barrow may have owed a separate debt or debts, she also had received during the marriage separate funds from various successions, which were fully sufficient for her to pay those debts, either directly or through the instrumentality of her husband, acting for her. If her husband had claims against her when he had himself received separate funds of the wife which were passing through his hands and subject to his control and order, he should have applied them to the payment of the wife's debts, and we must presume that he did so. Sharp v. Zeller, 110 La. 70, 34 South. 129; Succession of Kidd, 51 La. Ann. 1157, 26 South. 74.

We think that portion of the judgment appealed from, by which a charge of $1,071.-93 was allowed, is erroneous, also that portion which recognized a claim of $200, and a further claim of $196, and $12 on the accounts of Freyhan & Co., and their successors, and they are hereby annulled, avoided, and reversed. That portion of the said judgment in favor of the heir of Mrs. A. M. Barrow, and against C. M. Barrow, for the sum of $500, with interest thereon at the

rate of 5 per cent. per annum from April 30, 1904, is also annulled, avoided, and reversed.

That part of said judgment, by which the claim of the defendant for $6,579.89, for enhanced value of the separate property of deceased, resulting from improvements placed thereon, was reduced to $1,000, and said charge of $1,000 recognized and allowed, is also annulled, avoided, and reversed.

It is further ordered, adjudged, and decreed that, except so far as herein altered and reversed, the judgment appealed from is hereby affirmed; costs of appeal to be divided between the parties.